ST. JAMES ORPHAN ASYLUM ET AL. V. CHARLES G. MC-
DONALD, ADMINISTRATOR.*

FILED MAY 3, 1906.    No. 14,315.

Decedent's Estate: ATTORNEY'S FEE. A decedent's estate is properly
chargeable with fees paid to counsel for services rendered in suc-
cessfully defending the will against attack, and this rule ordi-
narily should not be departed from in a case where the contest
is instituted by the person named in the will as executor, and
the defense is conducted by counsel employed on behalf of a
legatee.

ERROR to the district court for Douglas county: WIL-
LIAM A. REDICK, JUDGE. *Reversed.*

*Smyth & Smith* and *John C. Cowin,* for plaintiffs in
error.

*McDonald & Woodland* and *Henry P. Stoddart, contra.*

JACKSON, C.

The plaintiffs in error made a claim against the estate
of Joseph Creighton, deceased, for attorney's fees on ac-
count of services performed by them in litigation arising
out of a contest of Mr. Creighton's will. Their claim was
rejected in the county court and an appeal taken to the
district court, where their petition was dismissed on gen-
eral demurrer. From the judgment of the district court
dismissing their petition they prosecute error.

Briefly stated the cause of action set out in the petition
is: That Joseph Creighton died on October 16, 1893, leav-
ing a will. Mary B. Shelby, a daughter, was his only heir
at law and was named as executrix. By the terms of the
will property to the value of $50,000 was devised to the
children of Mrs. Shelby, subject to a charge of $15 a week
for the support of the testator's sister-in-law, and prop-
erty to the value of $150,000 was devised to the Right
Reverend James O'Connor, Roman Catholic bishop of
Omaha, in trust for such charity as he might designate, an
orphanage preferred, and in the event that the testator

* Rehearing allowed. See opinion, p. 630, *post.*

43

should survive Bishop O'Connor, the property devised to
him in trust should go to his successor as bishop of
Omaha; the property so devised was substantially all of
his estate. Bishop O'Connor died during the lifetime of
Mr. Creighton and was succeeded by Right Reverend
Richard Scannell. Mrs. Shelby refused to accept the
trust of executrix under the will. Bishop Scannell con-
veyed the trust property left to him under the terms of the
will to the St. James Orphan Asylum. Bishop Scannell,
in conjunction with the orphan asylum, submitted Mr.
Creighton's will to the county court for probate, and in
that behalf employed the plaintiff Smyth as an attorney
to conduct the probate proceedings. Mrs. Shelby con-
tested the will and was successful in the county court, an
appeal was taken to the district court, where after three
separate trials she was again successful, and the case was
then appealed to the supreme court, where the judgment
of the district court was reversed and the cause remanded.
Another trial resulted in a verdict favorable to the valid-
ity of the will, which upon appeal to the supreme court
was affirmed. In the meantime Mrs. Shelby had been ap-
pointed administratrix of her father's estate, and con-
ducted the administration thereof until the validity of the
will was established and it was finally admitted to pro-
bate, when Richard S. Berlin was appointed administrator
with the will annexed. A controversy over the settlement
of the accounts of Mrs. Shelby as administratrix resulted
in further litigation, conducted, as the petition alleges, on
behalf of the orphan asylum by Mr. Smyth, assisted by Mr.
Cowin who became associated as counsel after the appeal
to the district court from the order of the county court re-
fusing to admit the will to probate. This litigation re-
sulted in a judgment against Mrs. Shelby for something
over $5,000, which was paid. Mr. Berlin died, and Chas.
G. McDonald succeeded him as administrator. A guard-
ian *ad litem* was appointed in the probate proceedings
for the beneficiaries under the will who were minors. He
filed an answer in behalf of his wards and procured one

expert witness to testify in support of the will. No other
service was performed by him. The litigation extended
over a period of several years, and Messrs. Smyth and
Cowin were required to devote a large amount of time in
the preparation and conduct thereof. The beneficiaries
and Messrs. Berlin and McDonald, as administrators, ac-
cepted the benefits of the litigation and adopted the serv-
ices of the plaintiffs in that behalf.

No question is raised as to the sufficiency of the peti-
tion, if, as a matter of law, it is within the power of the
court to require the payment of fees to counsel for the
successful litigant out of the funds belonging to the estate.
The matter of allowing costs and attorney's fees to an un-
successful litigant in a proceeding to contest a will has
several times been before the court. In *Mathis v. Pitman*,
32 Neb. 191, an order of the district court taxing costs
against the estate was affirmed. In *Seebrock v. Fedawa*,
33 Neb. 413, costs and fees of counsel for the unsuccessful
contestant were both allowed as a charge against the es-
tate. In *Wallace v. Sheldon*, 56 Neb. 55, *Mathis v. Pitman*
and *Seebrock v. Fedawa, supra,* were expressly overruled,
and it was held that the courts are not invested with the
discretion to award costs and attorney's fees to an unsuc-
cessful contestant of a will, solely for the reason that he
undertook the contest in good faith, Mr. Justice NORVAL
dissenting. In *Atkinson v. May's Estate,* 57 Neb. 137, the
court followed its holding in *Wallace v. Sheldon, supra,*
and it was there broadly stated that "the estate of a de-
cedent is not liable to an attorney for services rendered by
him for and at the request of a legatee under decedent's
will in a contest thereof." In that case, like all others
determined in this court, the question was one of the al-
lowance to the unsuccessful litigant, and we do not regard
it as so conclusive of the case, where the question involved
is the allowance of attorney's fees to the successful liti-
gant, as to preclude further investigation. We do not
doubt the power of the court to allow attorney's fees out
of the estate of a decedent in proper cases involving the

contest of a will. Had some one other than Mary B. Shelby instituted the contest proceedings, and she, as executrix, had employed counsel to defend the will and succeeded in the conduct of the defense to the extent of securing the will to be admitted to probate, the fees of her counsel would be a proper charge against the estate. *McIntire v. McIntire,* 192 U. S. 116.

It is urged in behalf of the plaintiffs in error that their position is the same as though they had been employed by the executrix to defend the will. This claim has considerable merit. In the case of *McIntire v. McIntire, supra,* speaking of the item of attorney's fees, it is said:

"On the allowance of the account it was charged against the estate. We are of opinion that the charge was proper. There is no contest over the amount. It was the proper business and duty of the administrator to defend the will, and he was entitled to a reasonable allowance for what he had to pay in doing so. The only just alternative would be to charge counsel fees as costs against the losing party, which would have been less favorable to the appellant. The general proposition is not disputed, but it is said that in this case the legatees retained the counsel and therefore ought to pay them. The other legatees as well as the administrator no doubt had a share in calling the counsel in. But that did not matter. The services were services to the estate in maintaining the testator's will, they were adopted by the administrator, and the usual rule must prevail."

The services performed by counsel in resisting the contest of the will, and the results obtained, were the same as they would have been had they been performed at the solicitation of the executor. The estate of Joseph Creighton was left in trust for certain purposes, and it is a general principle that a trust estate must bear the expenses of its administration. *Stone v. Omaha Fire Ins. Co.,* 61 Neb. 834. In that case counsel was consulted and finally employed to secure the appointment of a receiver for an insolvent corporation. A receiver was appointed, who

afterwards retained the services of the same counsel, and it was held that he was entitled to compensation out of the trust fund, not only for his services as attorney for the receiver, but for services performed by him in consultation and securing the appointment of the receiver. The case was determined upon the broad principle that, where one of many parties having a common interest in a trust fund, at his own expense, takes proper proceedings to save it from destruction and to restore it to the purposes of the trust, he is entitled to reimbursement either out of the fund itself or by proportionate contributions from those who accept the benefit of his efforts. Mr. Commissioner SEDGWICK, the present chief justice of this court who wrote the opinion in that case, cited the cases of *Mathis v. Pitman* and *Seebrock v. Fedawa, supra,* as sustaining the general proposition, recognizing the similarity of principle involved in those cases with the one then in hand. The case presented by the petition is one, in our judgment, that requires an equitable apportionment of the costs and attorney's fees. In the brief of defendant is contained a recital of certain facts, outside the record of course, but worthy of notice in view of our conclusion that the judgment of the district court must be reversed. They relate to the depleted condition of the specific devise to the children of Mrs. Shelby, owing to the expensive litigation in which the estate has been involved, including compensation to counsel other than plaintiffs' and it may be that when all the facts are fully disclosed it would be found inequitable to compel a contribution on the part of the minor litigants. These, however, are matters proper for consideration upon an investigation into the merits. The case before us is determined upon the record as it stands, and we are agreed that upon that record the judgment of the district court should be reversed and the cause remanded for further proceedings. We so recommend.

ALBERT, C., concurs.

DUFFIE, C., not sitting.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings.

REVERSED.

The following opinion on rehearing was filed January 5, 1907. *Former judgment vacated and judgment of district court affirmed:*

1. **Decendent's Estate: ATTORNEY'S FEE.** The estate of a decedent is not ordinarily liable to an attorney for services rendered by him for and at the request of a legatee under decedent's will, in a contest thereof. *Atkinson v. May's Estate,* 57 Neb. 137.

2. Former opinion, *ante,* p. 625, overruled.

BARNES, J.

This case is now before us on a rehearing. Our former opinion will be found *ante,* p. 625, where the facts involved in this controversy are stated. By referring to that statement it appears that by the will of the late Joseph Creighton about three-fourths of his large estate was given to one Bishop O'Connor, and his successors, in trust, to establish or endow an orphanage; that by a conveyance or assignment made by one Bishop Scannell, who was the successor of Bishop O'Connor, said legacy was given to the St. James Orphan Asylum. By the terms of the will the daughter of the deceased, Mary B. Shelby, who was his only heir-at-law, was disinherited, and the remainder of the estate was given to her children. She was named as executrix of the will, but refused to act in that capacity and declined to have the will probated. The St. James Orphan Asylum presented the will for probate. Mrs. Shelby contested, and was successful in the county court. After much litigation, however, the will was finally admitted to probate, and one Richard Berlin became the administrator thereof, but was later on succeeded by one Charles G. McDonald. The St. James Orphan Asylum

employed Mr. Smyth of the Omaha bar as its attorney to
establish the will, and secure for it the legacy mentioned
therein.   During the pendency of the proceedings Mr.
Cowin was employed to assist Mr. Smyth in conducting
the litigation, at the conclusion of which they filed their
claim in the county court of Douglas county, asking for an
allowance of $7,000 as counsel fees, and that the same be
made a charge against the estate.   The claim was resisted
by the administrator, and was disallowed by the county
court.   An appeal was taken to the district court, where a
demurrer to the claimants' petition was sustained and
their action witnessed.   They thereupon brought the ac-
tion, by appeal, to this court, and in our former opinion
it was held that "a decedent's estate is properly charge-
able with fees paid to counsel for services rendered in suc-
cessfully defending the will against attack, and this rule
ordinarily should not be departed from in a case where
the contest is instituted by the person named in the will
as executor, and the defense is conducted by counsel em-
ployed on behalf of a legatee."   This holding seems to have
been based on the decision in *McIntire v. McIntire*, 192
U. S. 116, 48 L. ed. 369.   A careful examination of that
case inclines us to the belief that the learned commissioner
who wrote our former opinion misapprehended the nature
and scope of that decision.   What was really held therein
was that a decedent's estate is properly charged with
counsel fees paid to counsel for services rendered for an
administrator with the will annexed in defending the will
against attack, although certain of the legatees, as well as
the administrator, had a share in calling in such counsel.
That this rule should not be applied to a case where the
services were not rendered for the administrator and lega-
tees jointly seems clear.   In the case at bar the services
were rendered for and at the instance and request of the
principal legatee under the will and against the executrix
named therein, who refused to accept the trust, and con-
tested the validity of the will.   It is true that in the case of
*Mathis v. Pitman*, 32 Neb. 191, and in *Seebrock v. Fedawa*,

33 Neb. 413, 29 Am. St. Rep. 488, counsel fees for the unsuccessful contestant were allowed as a charge against the estate. But in *Wallace v. Sheldon,* 56 Neb. 55, both of those decisions were expressly overruled, and it was held that the courts are not invested with the discretion to award attorneys' fees to an unsuccessful contestant of a will solely for the reason that he undertook the contest in good faith. Later on, in *Atkinson v. May's Estate,* 57 Neb. 137, it was broadly stated that "the estate of a decedent is not liable to an attorney for services rendered by him for, and at the request of a legatee under decedent's will in a contest thereof." And this has become the settled law of this state on that question. Not only is this the better rule, but it is supported by the great weight of authority in this country. In *In re Donges's Estate,* 103 Wis. 497, it was held that in a proceeding for the construction of a will counsel fees, except those of an executor, are not taxable as costs against the estate. And it was said in the opinion:

"In suits for construction of wills it is proper for the executor, whether plaintiff or defendant, to employ counsel to the end that the questions of law involved may be properly brought before the court. Whether he should employ counsel to present in the spirit of advocacy one or other or both of the antagonistic interests which may be involved by the construction, will often be a question of difficulty. Too often the counsel employed by the executors are in practical effect the ardent advocates of one side of a controversy between individual interests, in which the executor, as such, should have no choice. Obviously, such advocacy should not be compensated out of the common fund if its opposition is not to be also, and courts should be cautious in allowing for services ostensibly rendered to executors, but in spirit and effect rendered to one of the opposing interests, which should bear its own expenses. The field of discretion in controlling and approving conduct of executors and trustees is a broad one, however, and the court in each case must be guided by the

conditions and circumstances there present.    In the case
at bar, in this court at least, the services of counsel on
both sides have been rendered, not to the executors, but
to the respective claimants upon this estate, who should
each bear the expense therefor which he has incurred."

It must be conceded that there is no statutory authority
in this state for the allowance of the claim in question
against the estate.    But it is argued that the court in the
exercise of its general equity powers may treat the estate as
a trust fund and make such allowance.    This contention
was denied in *Estate of Cole,* 102 Wis. 1, where the follow-
ing cases were cited as a basis for that opinion : *Rose v.
Rose Beneficent Ass'n,* 28 N. Y. 184; *Downing v. Marshall,*
37 N. Y. 380; *Devin v. Patchin,* 26 N. Y. 441; *Lee v. Lee,* 39
Barb. (N. Y.) 172.    Indeed, it seems settled by the weight
of authority that the allowances which can properly be
made against the estate in such cases are counsel fees
for the executor, and the claim for what is known as tax-
able costs, or in other words, the statutory fees incurred
in the litigation.    It seems to us that the rule announced
in *Atkinson v. May's Estate, supra,* is not only supported
by the great weight of authority, but is a most just and
equitable one.    In the case at bar Mrs. Shelby certainly
was not benefited by the establishment of the will of her
deceased father.    If she had succeeded in defeating it, or
if there had been no will at all, she would have inherited
the whole of the estate, and her children, at her decease,
probably would have received it, less the portion expended
during her lifetime.    So it seems clear that the proponent
of the will, the St. James Orphan Asylum, was the party
most beneficially interested in establishing its validity and
having it probated.    Through the efforts of the claimants
herein, it succeeded in obtaining the legacy in question,
which was, as before stated, about three-fourths of the
whole estate.    To tax the balance of the estate with the
payment of counsel employed by the proponent, or with
any portion thereof, would seem to be unjust and inequi-
table, and in direct opposition to the rule announced in

the case last above mentioned. So we are of the opinion that the claim in question should not be made a charge upon the estate, but that the St. James Orphan Asylum, the party benefited by the services rendered by counsel, should be required to pay such claim out of the legacy which it secured through the efforts of its attorneys. This evidently was the view of the matter entertained by the district court and this meets with our approval.

For the foregoing reasons, our former judgment is vacated and the judgment of the district court is hereby affirmed.

JUDGMENT ACCORDINGLY.