W. L. STEGER, Plaintiff in Error,

v.

Harry W. GIBSON, Jr., Executor of the Estate of Robert Lee Williams (otherwise known as Robert L. Williams), Deceased, Defendant in Error.

No. 36350.

Supreme Court of Oklahoma.

June 21, 1955.

As Amended Sept. 19, 1955.

Rehearing Denied Sept. 20, 1955.

Don Welch, Don E. Welch, Madill, for plaintiff in error.

Priscilla W. Utterback, Durant, for defendant in error.

WILLIAMS, Vice Chief Justice.

This proceeding was originated in the County Court of Bryan County, Oklahoma, by W. L. Steger, hereinafter referred to as petitioner, against Harry W. Gibson, Jr., Executor of the Estate of Robert Lee Williams, deceased, hereinafter referred to as executor, to have allowed and paid to petitioner an attorney's fee for services rendered in connection with the contest of the will of said decedent.

Robert Lee Williams died testate on April 10, 1948. The will was contested in the county court, district court and the supreme court, but was admitted to probate in the county court and district court and judgment affirmed in the supreme court. The will named Harry W. Gibson, Jr., as executor and trustee and W. E. Utterback as attorney for the executor. W. E. Utterback acted as attorney for the executor through the firm of Utterback and Utterback until his death September 18, 1950, and thereafter Priscilla W. Utterback, the surviving partner of the firm of Utterback and Utterback has continued to act as attorney for the executor. Another attorney, Mr. C. C. Hatchett, was employed as special counsel for the executor on a quantum meruit basis, under a contract approved by the court, after the will contest was tried in the county court, and participated in the will contest in conjunction with Utterback and Utterback in behalf of the executor until his death in the spring of 1950.

At the time of the institution of the contest of the will, petitioner was city attorney of the city of Durant. Certain benefits will accrue to the city of Durant and its citizens by virtue of the provisions of the will of Robert Lee Williams, and it was therefore in the interest of such city that such will be upheld. Petitioner therefore appeared and participated in the will contest in all three courts as attorney for the city of Durant. In December of 1950 petitioner ceased to be city attorney of the city of Durant, but was requested by the city council to continue to represent the city of Durant in the will contest, which was then pending in the Supreme Court of Oklahoma. At the same time the city council passed a resolution requesting petitioner to continue to appear in behalf of said city in said litigation and further providing that upon the completion of said litigation petitioner should receive for his services a fee to be fixed by the court based on quantum meruit.

Shortly after the completion of the will contest in the supreme court, wherein the validity of the will of Robert Lee Williams, deceased, was upheld, petitioner filed an application in the county court for attorney fee for extraordinary services in the will contest, which application was contested by the executor.

The county court entered an order directing the executor to pay petitioner $10,-000 for representing the city of Durant in the will contest, and to make such payment immediately and later deduct such sum from the part of the estate to go to the city of Durant. The executor appealed such order to the district court. Petitioner

filed a motion to dismiss the appeal, which was overruled, and the matter was then tried de novo in the district court.

The district court rendered a judgment reversing and vacating the order of the county court and petitioner appeals.

As his first proposition of error petitioner urges that the appeal by the executor from the county court to the district court should have been dismissed for the reason that the executor was not a person aggrieved by the action of the county court and had no appealable interest in the controversy.

It is petitioner's contention that by virtue of 58 O.S.1951 § 772, an appeal to the district court may be maintained only by "a party aggrieved" and that executor is not injured in any way by the order of the county court appealed from and is therefore not a party aggrieved within the meaning of the statute. In support of such contention petitioner cites In re Cartwright, 65 Okl. 176, 164 P. 1148; Swackhamer v. Kline's Adm'r, 25 N.J.Eq. 503; Barnes v. Logsdon, 178 Okl. 645, 63 P.2d 964; Love v. Wilson, 181 Okl. 558, 75 P.2d 876; In re Lee's Estate, 206 Okl. 275, 243 P.2d 1013; In re Maher's Estate, 195 Wash. 126, 79 P.2d 984, 117 A.L.R. 91; McLeod v. Palmer, 96 Kan. 159, 150 P. 535, and In re Hand's Estate, 288 Pa. 569, 136 A. 864.

The foregoing cases, for the most part, merely set out the general rule that an administrator in his representative capacity is not a "party aggrieved" by a decree which merely determines the heirs at law of the estate for which he is administrator and that he cannot maintain in his representative capacity an appeal from such decree. Love v. Wilson, supra, In re Lee's Estate, supra, In re Maher's Estate, supra, In re Hand's Estate, supra. Such rule, however, has no application here. No decree determining heirs or order of distribution has been entered in the estate here involved, the estate has not been closed and no property has been distributed to the city of Durant. The appeal taken by the executor here was from an order directing him to pay out a large sum of money

from the funds of the estate to petitioner as an attorney fee and not from a decree determining heirs or ordering distribution.

In In re Cartwright, supra, cited by petitioner, we held that a surety on the bond of a guardian could appeal from a decree settling the final account of the guardian. Swackhamer v. Kline's Adm'r, supra, does not deal with the right of an administrator or executor to appeal, but on the contrary deals with the right of a party who is neither executor, administrator, heir, devisee, legatee or creditor to appeal from an order made in the course of administration proceedings of an estate in which he had no interest of any kind. It has no application here. McLeod v. Palmer, supra, cited by petitioner, was an action in ejectment and for partition brought in the district court against the executor and heirs of a decedent. The Kansas court held that the executor could not appeal from an adverse judgment in such action because decedent's will vested no title in him and he had no interest in the ultimate disposition of the property. Such holding is contrary to the well established rule in this state and was no doubt occasioned by the differences in the statutes of the two states with reference to the rights and duties of administrators and executors. For our own decisions dealing with the right and duty of an administrator or executor to prosecute or defend actions involving title to or right to possession of real property on behalf of the estate, including the right to appeal from an adverse judgment therein, see Jameson v. Goodwin, 43 Okl. 154, 141 P. 767; Snodgrass v. Snodgrass, 107 Okl. 140, 231 P. 237, 52 A.L.R. 1213. Such cases have no application to the question here presented, however.

The case of Barnes v. Logsdon, supra, cited by petitioner, does not sustain his contention. In that case we held that an administrator was entitled to contest probate of a will later produced and was a "party aggrieved" by an order denying the contest and entitled to appeal therefrom. In so holding we made an extensive review of the authorities concerning the right of an administrator or executor to

appeal, and said in the body of the opinion [178 Okl. 645, 63 P.2d 967]:

"The following is from volume 2 of the new American Jurisprudence, p. 960: 'The general rule is that one who acts in a representative capacity by which he is charged with a duty to protect an estate committed to his charge in the interest of all concerned has such an interest as entitles him to appeal or bring error proceedings from a judgment, order, or decree affecting the interests of the estate adversely.'"

We further said in the same opinion:

"It would be unwise to lay down a dogmatic rule either that an administrator may appeal or that he may not appeal. It depends upon whether he has a representative interest. Our study of the cases convinces us that appeals have been permitted where the administrator had some interest to protect in his representative capacity and have been denied where he sought to appeal in his representative capacity but where his interest was only as an individual. In other words, the facts distinguish the cases, rather than there being a wide divergence of legal views."

In the case of In re Kohpay's Estate, 206 Okl. 548, 245 P.2d 79, we held that an executor was entitled to appeal from an order relating to the payment of a claim against the estate from a particular fund and reannounced the rule that an executor may appeal from a judgment, order or decree affecting the interest of the estate adversely.

In the case of In re Babcock's Estate, 112 N.J.Eq. 374, 164 A. 407, 408, the court disposed of the contention here made with the following language:

"After the allowance of the counsel fee in question, the executor appealed to the Prerogative Court. This he had a right to do, if he were a person aggrieved by the allowance of the counsel fee. Article 6, § 4, par. 3, of the state Constitution. The Vice Ordinary held that the executor was not

aggrieved by the allowance of a counsel fee, because he was not a residuary legatee and dismissed the appeal. In this, we think, there was error. The executor charged with a trust is in duty bound to conserve it. It is far too narrow a construction of the right of appeal to hold that nothing aggrieves an executor except that which comes out of his own pocket. His duty is to protect the estate from all claims which he may regard as unfounded or unreasonable."

We conclude that the trial court did not err in refusing to dismiss executor's appeal from the order of the county court.

As his second and last proposition petitioner urges that the trial court should have affirmed the judgment of the county court and erred in not so doing. In support of such proposition he urges that the county court had jurisdiction; that its judgment was not erroneous; and that even if it was erroneous the parties here complaining cannot complain.

 Petitioner contends that we held in In re Schwint's Estate, 183 Okl. 439, 83 P.2d 161, that where the services rendered by an attorney were beneficial to the entire estate the probate court might allow such attorney a fee and direct that it be paid out of the funds of the estate even though such attorney had not been employed by the executor, and that the services rendered by petitioner here were beneficial to the entire estate just as were the services involved in In re Schwint's Estate, supra. We think, however, that petitioner misconceives the nature and effect of our holding in such case. In that case no will contest was involved, but rather some of the heirs employed an attorney who, together with an attorney employed by the executor for the same purpose, successfully pursued a claim against another party as a result of which the estate was enhanced by some $25,000. The county court determined the amount of the fee to which such attorneys were entitled for effecting such recovery and ordered such fee divided between the attorneys in certain proportions. In approving such action by the

court we pointed out the general rule that the employment of an attorney by an heir or legatee will not of itself create a liability on the part of the estate for the fees of such attorney and cited with approval In re Baxter's Estate, 94 Mont. 257, 22 P.2d 182, 186. We also pointed out the exception to the rule, that where the services rendered by the attorney employed by the heirs or legatees are beneficial to the estate as a whole, the court may, if the facts justify it, allow out of the estate a reasonable fee for such services. We then approved the findings of both the county court and the district court that the services of the attorney in recovering for and enhancing the amount of the estate some $25,000 benefitted the estate as a whole and concluded that such fact justified the allowance of the fee. Petitioner's claim however, falls squarely within the general rule announced in In re Baxter's Estate, supra, rather than the exception thereto pointed out in In re Schwint's Estate, supra, since the factual situation involved in petitioner's claim is identical with that involved in In re Baxter's Estate, supra. In that case, as here, the attorney claiming a fee for services rendered in a will contest had been employed solely by a beneficiary under the will and not by the executor. The court, in its opinion, states the question and facts involved as follows:

"4. Can the judgment awarding Clifford, a mere devisee, an attorney's fee for the services of his counsel in resisting the will contest, be sustained?

"The record shows that Mr. Clifford employed Mr. Healy generally to represent his interest in the Baxter estate. During the contest Mr. Healy represented Clifford and no one else. He was not employed by any one else. He consulted frequently with Mr. Poore, attorney for the executor, and with Mr. Kyle, attorney for some of the defendants. While these three did not employ the same tactics, they pursued a common purpose, viz., to defeat the will contest. This was accomplished, but not alone through the efforts of Mr. Healy; but this was not important, for he was not authorized to represent any one but Clifford, nor did he assume to do so."

The court then uses the following language in answering the question presented, which we believe to be completely applicable here:

" 'It is well settled that the employment of counsel by one of several heirs or legatees will not, of itself, create a liability on the part of the other heirs or legatees for the compensation of the counsel so employed, even though his services were beneficial to all of them, excepting where they have resulted in bringing a fund into court, and, under the local law, attorney fees may be allowed therefrom. Nor will the employment of an attorney by an heir or legatee create a liability on the part of the estate involved.' 2 Thornton on Attorneys at Law, § 415; In re Gratton's Estate, supra [136 Or. 224, 298 P. 231, 79 A.L.R. 517]. We are satisfied this is the correct rule. If it were otherwise, why could not the estate be made liable for the attorney's fees of each legatee if each saw fit to employ a different attorney to defeat the will contest?

"Except as allowed by statute, when attorneys' fees are chargeable to an estate, it is on the theory that they were incurred for the benefit of the estate as a whole. In re Faling's Estate, supra [113 Or. 6, 228 P. 821, 231 P. 148]; In re MacMullen's Estate, 117 Or. 505, 243 P. 89, 244 P. 664.

"In the exhaustive note to In re Gratton's Estate, supra, 79 A.L.R. 522, it is said that 'the general rule is that no allowance may be made out of the estate of a deceased person for the services of an attorney not employed by the personal representative of the estate, where the services were rendered for the sole benefit of an individual or group of individuals interested in the estate,' with a large number of supporting cases.

"c. Nor is Mr. Clifford aided by the common fund doctrine. As was said in Ford v. Gilbert, 44 Or. 259, 75

P. 138, 139; 'When a fund is brought into court through the service of an attorney, or where his services have added to or preserved or increased the amount being administered, the court of primary jurisdiction may properly allow a reasonable compensation for his services to be paid from the fund.' Compare Forrester & MacGinniss v. Boston, etc., Min. Co., 29 Mont. 397, 74 P. 1088, 76 P. 211. But here Clifford's attorney did none of these things. He did not enhance nor benefit, the estate in any way. That his services were valuable in the will contest may not be gainsaid, but they were rendered in behalf of his client Clifford in sustaining the validity of the will, upon which alone Clifford's interest in the estate depended. The ultimate question, dependent upon the validity of the will, was whether the beneficiaries would receive that which the testatrix undertook to give them, or whether the estate would go wholly to her heirs. The corpus of the estate would be the same in either event.

"An extended search of the authorities has not disclosed a single decision allowing attorneys' fees to a devisee or legatee on facts similar to those presented here. On the contrary, the general rule is that the estate of a decedent is not liable to an attorney for services rendered by him for and at the request of a devisee or legatee in a will contest. St. James Orphan Asylum v. McDonald (In re Creighton's Estate), 76 Neb. 625, 107 N.W. 979, 110 N.W. 626; Nichols v. Wallace, 155 Okl. 231, 9 P.2d 430.

"Considering the fact that Mr. Healy was employed by and represented Clifford only in the will contest, we reach the inescapable conclusion that the judgment cannot stand."

█ █ Petitioner suggests that since the order of the county court directed the executor to pay petitioner immediately and later deduct the amount of such fee from the part of the estate to go to the city of Durant, it was not really made a charge against the estate but was actually charged to the city and that since the city of Durant is not complaining, executor should not be heard to complain. In this connection petitioner cites authority to the effect that the county court has jurisdiction to determine the heirs, legatees, and devisees, their interests in the property, and distribute such property accordingly. That the county court has such jurisdiction is, of course, beyond question. Such jurisdiction, however, must be exercised in accordance with the applicable statutory limitations and pursuant to the provisions of the will of the testator, when such will is valid and has been admitted to probate. The order of the county court here involved could not possibly qualify as a decree of distribution or partial distribution or determination of heirs since no application had been filed therefor, no notice given as required by statute and no bond filed as required by statute before a partial distribution can be made. Furthermore such order does not purport to be anything other than an order to pay petitioner an attorney fee and to later deduct the amount thereof from the share of the city of Durant in said estate. It does not purport to determine the identity of the devisees and legatees under the will or determine the share of the estate that any such devisee or legatee will take.

█ The fallacy in petitioner's argument is that strictly speaking the City of Durant, as such, has no share of the estate. Its only share, provided it qualifies under the terms of the will for distribution thereof, is that of a trustee of a bequest to be distributed and used under rather precise conditions exclusively for the Robert L. Williams Public Library. That part of the will, in which such bequest is made and described, is subsection (c) of the "Fifth" paragraph of the will and appears to be a part of a plan the testator formulated many years before his death to perpetuate his memory by enabling the City of Durant to have such a library. As might be quite natural the donor made his benevolence subject to certain conditions, which required the City to undertake certain obligations in return therefor, apparently to the end, among others, that such library would become not only a fit, but a

*lasting,* memorial to him and his bounty. This is indicated both by various provisions in his will and in the Warranty Deed he executed as early as March 14, 1937, whereby he conveyed to said municipality the land for the library's site. Considering such portions of these instruments together, it appears, although there was no other evidence introduced on the subject, that the City was required as a condition precedent to its eligibility to receive such gift to record by resolution of its City Council, and/or otherwise, its acceptance, agreement to, and/or entering into, certain undertakings with reference to the establishment and maintenance of said library; otherwise both the gift of the land and the building the testator had helped the City acquire during his lifetime, and the bequests of his will supplementing it, would "revert or go" to the trustees of the First Methodist Church South in said City. Such "reversionary" clause was written into both the deed and the will. If the recital in the will's paragraph "Fourth" (g), in harmony with a recital in the deed, is to be taken as a true representation of fact, the City had "by proper resolution by its appropriate official board accepted" the gift of the library site "with the conditions named and set out in said deed * * *". The funds and personal property that in the will are provided to be given to the library are in more than one provision thereof made subject to the "same conditions" as the aforedescribed inter vivos gifts, plus at least one new condition (not mentioned elsewhere in the record) and is made subject to the same reversion to the aforesaid Methodist Church if such conditions are not accepted, met or complied with by the City. This latter condition appears in paragraph "Fifth" (c) as follows:

"(c) That part of my estate not heretofore disposed of in this will including property and royalty interest under contract dated August 28, 1942, or thereafter, between Robert L. Williams, party of the first part and Thomas M. Williams, party of the second part, *shall go to the City of Durant as a trust fund for the Robert L. Williams Public Library* hereinbefore referred to and de-

scribed and the trustees and legal representatives of said Williams Church or Chapel heretofore referred to and described in equal parts, *but as to the City of Durant for said Library specifically for research and for building a wing to the said Library building* on the south and west corner of the lot so as to provide additional space for the library part of the said building where books may be properly placed and kept in stacks and then for the repair of said building and for the purchase of books *and for the payment not to exceed One Hundred Fifty ($150.-00) Dollars per month for a research clerk or assistant in the Library with the proviso that then it shall be mandatory for the City of Durant to spend at least One Hundred Fifty ($150.00) Dollars a month toward the payment of a Librarian's salary and necessary expense, etc. and said grant and devise for said Library is under the same conditions as the grant of said lots, otherwise the herein devise shall go to the First Methodist Church in Durant, or its successors."* (Italics ours.)

It nowhere appears in the evidence of this case that the City of Durant has by resolution of its official board, or otherwise, determined to accept the above-described share of the testator's estate so conditionally bequeathed and/or devised to it or that it may ever undertake to comply with the conditions above referred to. If it does not, the trust described in the will may never come into being and the share of the Williams estate therein provided must, according to the will, go to the Methodist Church therein named, without the City of Durant or its people receiving the benefits of any such share. Therefore, in the absence of proof that the City has received such share, or properly accepted the conditions attached, by the will, to such bequest, how can it be said that it now has any distributive share of said estate out of which to pay an attorney fee or any other expenses? Nor can it be said with the requisite degree of certainty, that it ever will have such share. When this situation is considered, it then becomes patent that the order for payment

of such fee is at least premature and unauthorized at the present time. On the basis of this conclusion and the record in this case, the trial court cannot be said to have erred in setting it aside. Its judgment is therefore affirmed.

JOHNSON, C. J., and CORN, BLACKBIRD and JACKSON, JJ., concur.

DAVISON and HALLEY, JJ., dissent.