**BRUCE v. EVERTSON et al.**

No. 26096. May 18, 1937.

112

H. W. Conyers and H. R. Duncan, for plaintiff in error.

Holcombe, Lohman & Barney, for defendants in error.

BUSBY, J. Maud Bruce, a member of the Osage Tribe of less than one-half degree of Indian blood, who possessed a certificate of competency, died on February 6, 1925. Prior to her death she had made a testamentary disposition of her property by will which subsequently received the approval of the Secretary of the Interior.

By the terms of her will it was directed that her just debts be paid and that her property be distributed one-third to her husband, C. L. Bruce, the remaining two-thirds to her four children in equal shares.

The deceased was the owner of an "Osage headright" under which during her lifetime she received quarter annual royalty payments from the proceeds of oil and gas produced on the lands of the Osage Tribe. C. T. Evertson became administrator of her estate. On October 1, 1930, his administrator's bond in the penal sum of $1,000 was executed by the United States Fidelity & Guaranty Company. Evertson continued to act as administrator of the estate until final settlement and distribution thereof in 1933. During the period of time he acted as administrator he received the periodical or annuity payments from the Osage agency and disbursed a portion thereof in payment of the costs of administration and in payment of debts of the deceased. These disbursements were made pursuant to orders and directions of the county court of Osage county.

On the 25th day of July, 1933, C. L. Bruce commenced this action in the district court of Osage county seeking to recover from the administrator and the surety on his bond the moneys thus received and disbursed on the theory that the administrator was not entitled to receive and disburse the money and that the county court was without jurisdiction or authority to direct or order the disposition made of moneys derived from the quarterly payments on the Osage headright.

Section 4 of the Act of Congress of March 2, 1929 (45 Stat. 1478, 1480), provides in part as follows:

"Upon the death of any Osage Indian of less than one-half of Osage Indian blood or upon the death of an Osage Indian who has a certificate of competency, his moneys and funds and other property accrued and accruing to his credit shall be paid and delivered to the administrator or executor of his estate to be administered upon according to the laws of the state of Oklahoma."

In Globe Indemnity Co. v. Bruce, 81 Fed. (2d) 143, decided December 9, 1935 (certiorari denied by the Supreme Court of the United States, 297 U. S. 716, 80 L. Ed. 1001), an action prosecuted against another administrator of the same estate upon the same theory, the Federal Circuit Court of Appeals, Tenth Circuit, decided that the word "accruing" as used in the foregoing congressional act contemplated the "interest and royalties that will arise to the credit of his (the deceased's) headright after his death and prior to distribution of his estate." The court thereupon concluded that "the probate court had jurisdiction over the headright of Maude Bruce and the quarterly payments accruing thereto after her death pending the administration and distribution of her estate." It accordingly held that the orders of the county court "directing the payment of claims and distribution of the estate are not subject of collateral attack," thus precluding recovery in the character of action involved in that case, which was the same as in the case at bar.

That case disposes of the case at bar unless we decline to follow the same. It is urged that we should refuse to follow the federal court because we placed a different interpretation on the word "accruing" as used in the federal statute in DeNoya v. Arrington, 163 Okla. 44, 20 P. (2d) 563.

The fact that the Supreme Court of the United States refused to review the decision of the lower federal court is, of course, not to be taken as an expression of opinion of the highest federal court (Hamilton-Brown Shoe Co. v. Wolf Bros. & Co., 240 U. S. 251, 36 S. Ct. 269; U. S., etc., v. Carver, 260 U. S. 251, 36 S. Ct. 181; Atlantic Coast Line Railroad Co. v. Powe, Adm'r, 283 U. S. 401, 51 S. Ct. 498), and the decision of the lower federal court in determining the meaning of the federal statute is highly per-

suasive rather than controlling. 15 C. J. 930, and cases there cited.

However, in the interest of a harmonious administration of the law, we are prone to yield to the judgment of the Circuit Court of Appeals in cases such as this where the meaning of the language used in a federal statute is not free from doubt. We therefore modify our former opinion in DeNoya v. Arrington, supra, to the extent necessary to make it conform to the views herein expressed and approved. The decision in that case is not otherwise disturbed.

The decision of the trial court is affirmed.

BAYLESS, V. C. J., and PHELPS, CORN, and GIBSON, JJ., concur.