## TUCKER et al. v. BROWN, Adm'x.

No. 28244.     Oct. 25, 1938.

Rehearing Denied Dec. 20, 1938.

Application for Leave to File Second Petition for Rehearing Denied June 13, 1939.

Joseph D. Mitchell and H. P. White, for plaintiffs in error.

A. B. Campbell, for defendant in error.

OSBORN, C. J. Charles Brown, a full-blood Osage Indian allottee, who had a certificate of competency, died on May 9, 1934, leaving a surviving widow, Florence, and one child by a former marriage, Dorothy Mae Brown Glenn. The portion of the estate involved herein is the income which accrued from one and three-fourths' Osage Indian headrights, the deceased's individual headright and an inherited three-fourths, during the pendency of administration proceedings in the county court of Osage county. The widow, Florence Brown, was appointed special administratrix pending the approval or disapproval of the decedent's will by the Secretary of the Interior. When the Secretary of the Interior refused to approve said will, Florence Brown was appointed general administratrix. While she was acting as special administratrix the Osage Indian Agency paid her, as such administratrix, the income from the deceased's headright interest, which consisted of the quarterly payment of June, 1934, and that portion of the September, 1934, payment estimated to have accumulated prior to the death of the deceased. Subsequent income from the headright of the decedent was credited to the account of his estate by the Osage Indian Agency, and not paid to the administratrix. When the county court determined the heirs of said Charles Brown, this accrued fund was distributed by the Indian Agency in accordance with said decree.

During the period for filing claims of creditors against the estate, W. C. Tucker and R. W. Tucker, partners, doing business under the firm name of the Osage Mercantile Company, filed the claim in controversy. The claim, which was allowed by the administratrix and the county court, was based upon a judgment obtained in the district court of Osage county for goods and merchandise the deceased, Charles Brown, had purchased subsequent to the issuance of his certificate of competency.

Upon notice of the hearing for settlement of the final account and report of the administratrix, said W. C. Tucker and R. W. Tucker (Osage Mercantile Company) filed objections and exceptions to the final account and moved to set aside the order of the county court theretofore made determining the heirs of the decedent. The county court denied the exceptions and objections, overruled the motion and confirmed the final account of the administratrix, holding there were no funds in the estate subject to the payment of the claims of general creditors. The appellants contended that the entire income accruing from the headright interest of the deceased pending administration was an asset of the estate subject to the payment of the claims of creditors, and, if necessary, the entire headright interest was subject to sale to pay the debts of the deceased. Upon appeal to the district court the judgment of the county court was affirmed, and said W. C. Tucker and R. W. Tucker have appealed from that judgment. For convenience we shall refer to the parties as they appear in this court.

In Globe Indemnity Co. v. Bruce, 81 Fed. 2d 143 (U. S. C. C. A.), an Osage headright was defined as the right to receive trust funds arising from mineral income of tribal lands, which were segregated and credited to individual members of the Osage Tribe, at end of trust period, and during such period to participate in distribution of bonuses and royalties arising from mineral estate and interest on trust funds held by the government of the United States. Also, DeNoya v. Arrington, 163 Okla. 44, 20 P.2d 563.

The appellants contend section 4 of the Act of Congress of March 2, 1929, vested authority in the county courts of Oklahoma to dispose of the headright interest of a deceased full-blood Osage allottee, who had a certificate of competency, in the same manner as unrestricted funds or property, if necessary, in order to pay the claims of

general creditors of decedent, and hence alienate or incumber the headright. Said section provides:

"* * * Upon the death of any Osage Indian of less than one-half Osage Indian blood, or upon the death of an Osage Indian who has a certificate of competency, his moneys and funds and other property accrued and accruing to his credit shall be paid and delivered to the administrator or executor of his estate to be administered upon according to the laws of the state of Oklahoma."

However, the Circuit Court of Appeals for the Tenth Circuit, in Taylor v. Tayrien, 51 Fed.2d 884, reviewed all the acts of Congress relative to the Osage Indian Tribe, including the Act of March 2, 1929, supra, and concluded that there was no act of Congress providing for the sale, incumbering, or alienation of headrights by those of Indian blood. See, also, In re Irwin, 60 Fed.2d 495. Consequently, we begin consideration of this case with the proposition established that an Osage allottee cannot alienate, sell, or incumber his headright interest.

In the case at bar the lower court based its judgment upon the case of DeNoya v. Arrington, supra. However, the appellants maintain the opinion therein was overruled by this court in the later case of Bruce v. Evertson, 180 Okla. 111, 68 P.2d 95. In DeNoya v. Arrington, supra, the question presented to the court was whether the estate of a deceased Osage Indian of less than one-half Osage blood, who had a certificate of competency, should be held open, and final settlement delayed, until sufficient income accrued from the decedent's headright to pay the claims of creditors. The holding of this court was stated in the syllabus, prepared by the court, as follows:

"The income accruing to the headright of a deceased Osage allottee subsequent to the death of such allottee is not an asset of the estate of such decedent which can be appropriated for the payment of the claims of creditors."

An analysis of the opinion therein discloses this conclusion was based upon two reasons: First, that section 4 of the Act of Congress of 1929, supra, did not confer jurisdiction upon the county courts of Oklahoma of the income accruing from an Osage allottee's headright after the death of said Indian; and the second reason was stated in the following language:

"To permit the estate to be held open to pay the claims of the creditors from the income of the headright in question would be discordant to every act of Congress dealing with the headright and permit defendants in error to do indirectly what cannot be done directly. The headright is restricted, and any income accruing thereto subsequent to the death of the allottee cannot be appropriated in any manner by the creditors of such deceased allottee. It is the 'last bulwark' that the government holds for the Osage Indian against his prodigality and improvidence. To hold otherwise would be to thwart the will of Congress on this subject, and it would quickly lead to the incurring of indebtedness by the members of the Osage Tribe of Indians equal to the value of their headrights and thereby indirectly incumber and alienate the headright which Congress has uniformly and steadfastly sought to safeguard and protect for the allottees and their heirs. The government is interested not only in the allottees, but also in their heirs."

In Bruce v. Evertson, supra, which appellants maintain overruled the above case, we find this court refers to the decision of the Circuit Court of Appeals in Globe Indemnity Co. v. Bruce, supra, wherein that court said, after stating that the Oklahoma Supreme Court in DeNoya v. Arrington, supra, had held quarterly payments accruing to the headright of a deceased Osage allottee after his death were not assets subject to payment of claims of creditors:

"It further held that the word 'accruing' in section 4, supra (Act of 1929), embraces only the quarterly payment for the quarter in which the decedent dies. With the latter holding we do not agree."

Whereupon the Circuit Court of Appeals held that the word "accruing" should be construed to include all payments derived from the headright after the death of the decedent and prior to final settlement of the estate. Having thus determined the county court had jurisdiction of the funds, the court went no further, since that determined the question of collateral attack, which was the same question involved in Bruce v. Evertson, supra. The Circuit Court of Appeals specifically stated:

"The question whether the headright and the quarterly payments, or either of them, could be resorted to for the discharge of general claims against the estate of Maude Bruce, is not presented, and we express no opinion."

After referring to the foregoing opinion, this court then held in Bruce v. Evertson, supra, the opinion in DeNoya v. Arrington, supra, to be modified to conform with the Circuit Court of Appeals' conclusion in the

above case, but added that "the decision in that case is not otherwise disturbed."

We conclude, therefore, the DeNoya v. Arrington opinion has been modified to hold that the county courts of Oklahoma have jurisdiction of the payments accruing to the Osage headright subsequent to the allottee's death and prior to distribution of the estate. The holding of this court to the effect that such payments are not assets of the estate subject to the payment of the claims of creditors was neither criticized nor overruled. The modification as set forth in Bruce v. Evertson, supra, affects only one of the two reasons upon which the above holding was based. We believe the reason which was not criticized is the more substantial and, in reality, the fundamental reason; that is, that the manifest purpose of Congress, as expressed in all legislation regarding said Osage Tribe, has been to preserve unincumbered and intact the individual Osage Indian's headright interest in the Osage tribal funds and property, and it could not be alienated either directly or indirectly.

This view is also expressed by the Circuit Court of Appeals which decided the Globe Indemnity Co. Case, in Taylor v. Tayrien, supra, wherein that court held the headright of an Indian of one-half Osage blood did not pass to the trustee in bankruptcy. The court said:

"If, in the process of emancipation, Congress has not made these headrights transferable, they do not pass to the trustee in bankruptcy, for it would thwart the purpose of Congress to permit them to be indirectly transferred by the expedient of a debt followed by judicial sale. * * * If, for the protection of the Indian, Congress has withheld the power of alienating his headright, then there is no power to alienate it by judicial process; for that would be to permit the 'white neighbor' to accomplish indirectly what the law forbade him to do directly—to acquire the headright which Congress proposed to preserve for the care and support of its Indian wards."

Therefore, we accept the rule stated by this court in DeNoya v. Arrington, supra, as subsequently modified by Bruce v. Evertson, supra, and hold these funds accruing to the headright were not subject to the payment of the claim of the appellants. To hold otherwise would be to do violence to the manifest intention of Congress in enacting the various Osage Indian Acts. Where Congress has removed restrictions upon the property of Osage Indians or granted additional powers in respect to such restricted property, the intention to do so has been clearly expressed. Taylor v. Tayrien, supra. In the absence of such clear intention, we will not overrule the case of DeNoya v. Arrington, supra.

Appellants also contend section 4 of the Act of Congress of 1929, supra, was not applicable in the case of DeNoya v. Arrington, supra, since the decedent in that case died prior to the enactment of said statute. If that is true, then neither was it applicable in Globe Indemnity Co. v. Bruce, supra, or Bruce v. Evertson, supra, upon which appellants rely. However, in view of the opinion expressed herein, it is unnecessary for us to pass upon this question.

Nor do we see wherein the fact the widow of the decedent is a white woman should affect our decision herein. It is immaterial to a determination of this case whether the widow of the decedent can alienate her inherited interest in the deceased's headright or not.

In the light of the views expressed above, the other assignments of error are without substantial merit. The judgment of the lower court is affirmed.

RILEY, CORN, GIBSON, and DAVISON, JJ., concur.