In re KOHPAY'S ESTATE.

PEARSON v. NEWKIRK et al.

No. 34376.  June 3, 1952.

*245 P. 2d 79.*

Frank T. McCoy, John T. Craig, and John R. Pearson, Pawhuska, for plaintiffs in error.

Chas. R. Gray, W. N. Palmer, and Paul A. Comstock, Pawhuska, for defendants in error.

PER CURIAM. The plaintiff in error, John R. Pearson, as executor of the estate of Hugh Kohpay, deceased, an Osage half-blood Indian, having a certificate of competency, appeals from the order of the district court of Osage county, which court upheld the judgment of the county court of Osage county in connection with the hearing on the final account and petition for distribution decreeing that the estate be held open until sufficient funds should accumulate from the quarterly Osage annuity payments to pay the claims of the defendant in error general creditor, Nellie Newkirk, for board, room and nursing care during the lifetime of said Osage Indian, and the claim of defendant in error general creditor, Chas. S. Crouse, for money loaned to him.

The plaintiff in error contends that income accruing to the headright of an Osage Indian subsequent to his death may not be appropriated for the payment of claims of general creditors under the provisions of section 4 of the Act of Congress of March 2, 1929 (45 Stat. 1478, 1480), providing in part:

"Upon the death of any Osage Indian of less than one-half of Indian blood, or upon the death of an Osage Indian who has a certificate of competency, his monies and funds and other property accrued and accruing to his credit shall be paid and delivered to the administrator or executor of his estate to be administered upon according to the laws of the State of Oklahoma."

The defendants in error contend (1) that income from an Osage Indian headright may be used to pay general creditors when the heirs or beneficiaries are white persons and not of Indian blood; (2) that Hugh Kohpay by will executed and approved by the Secretary of Interior in accordance with section 8 of the Osage Act of Congress of April 18, 1912 (37 Stat. at Large 86) specifically provided for the payment of "all my just debts" in the first paragraph thereof, thus payment is authorized; (3) that the beneficiaries and heirs agreed by stipulation to the payment of "all claims, debts and charges against the estate hereafter allowed by the County Court," which agreement was approved by the Secretary of Interior and thus authorizes the use of the income from the headright in payment of these claims of general creditors.

The first paragraph of Hugh Kohpay's will provided:

"(1) I will and direct that all my just debts, including funeral expenses and expenses of my last illness be paid as soon after my death as my executor may do so."

The pertinent provision of the stipulation of settlement entered into prior to the approval of said will by the Secretary of Interior between the widow of the testator who was to receive one-half, Floyd Soderstrom, who was beneficiary of one-half, and Elsie Kohpay Shelton, sister of the decedent, and Franklin Eugene Kohpay, nephew of the decedent, the last two named being heirs but not beneficiaries under said will, provides as follows:

"Agreed and understood by and among the parties hereto, that in consideration of the mutual concessions made herein and in full compromise and settlement of their conflicting claims to said estate, said estate, after the full payment and discharge of all claims, debts and charges against the same hereafter allowed by the County Court of Osage County, Oklahoma, shall be divided as follows:"

with a provision for division one-half to the widow of the decedent, one-fourth to Floyd Soderstrom, one-eighth to Elsie Kohpay Shelton, and one-eighth to Franklin Eugene Kohpay.

Plaintiff in error assigns as error the overruling of the motion for new trial, the sustaining and affirming of the judgment of the county court of Osage county, Oklahoma; that said decision and judgment are contrary to law and that the district court erred in ordering that the income accruing to the headright of Hugh Kohpay, deceased, subsequent to the death of said decedent, could be appropriated for the payment of the claims of the general creditors of the said decedent.

The defendants in error have filed a motion to dismiss the executor's appeal on the ground that the executor has no appealable interest in the question involved, citing the case of Love v. Wilson, 181 Okla. 558, 75 P. 2d 876. Therein it was held that an administrator in his representative capacity is not a "party aggrieved" or a "party interested" in a decree which merely determines the heirs at law of the estate for which he is administrator and

that he cannot maintain in his representative capacity an appeal from such decree. That case is distinguishable from the instant case. We think the applicable rule is set out in the case of Barnes v. Logsdon, 178 Okla. 645, 63 P. 2d 964, wherein it quotes vol. 2 of American Jurisprudence, page 960:

"The general rule is that one who acts in a representative capacity by which he is charged with a duty to protect an estate committed to his charge in the interest of all concerned has such an interest as entitles him to appeal or bring error proceedings from a judgment, order or decree affecting the interests of the estate adversely."

The motion of the defendants in error that the appeal of the executor be dismissed is denied.

Turning now to a consideration of the chief questions raised by this appeal, ever since the case of Denoya v. Arrington, 163 Okla. 44, 20 P. 2d 563, the rule has been that income accruing to the headright of an Osage Indian subsequent to his death may not be appropriated for the payment of claims of general creditors. Therein the court, after considering fully the various Acts of Congress affecting the Tribe of Osage Indians, held:

"There is no act of Congress providing for the sale, encumbering or alienation of headrights by those of Indian blood. * * * If there is no such provision, how can it be consistently urged that the income from the headright of deceased Osage Indian allottee accruing subsequent to his death over an indefinite period can be taken to satisfy the debt of said allottee? This would be in effect an encumbering, assigning, transferring or an alienation of such headright unauthorized by Congress.

"'* * *

"'* * * To permit the estate to be held open to pay the claims of the creditors from the income of the headright in question would be discordant to every act of Congress dealing with the headright and permit defendants in error to do indirectly what cannot be done directly. The headright is restrict-

ed, and any income accruing thereto subsequent to the death of the allottee cannot be appropriated in any manner by the creditors of such deceased allottee. * * * To hold otherwise would be to thwart the will of Congress on this subject, and it would quickly lead to the incurring of indebtedness by the members of the Osage Tribe of Indians equal to the value of their headrights and thereby indirectly incumber and alienate the headright which Congress has uniformly and steadfastly sought to safeguard and protect for the allottees and their heirs. The government is interested not only in the allottees but also in their heirs.

"We conclude that the income accruing to the headright of a deceased Osage allottee subsequent to the death of such allottee is not an asset of the estate of such decedent which can be appropriated for the payment of the claims of creditors."

While the Denoya case has been modified by the subsequent cases of Bruce v. Evertson, 180 Okla. 111, 68 P. 2d 95, and Globe Indemnity Co. v. Bruce, 81 F. 2d 143, it was pointed out in the case of Tucker v. Brown, 185 Okla. 234, 90 P. 2d 1071, that the Globe Indemnity Company case and the case of Bruce v. Evertson involved collateral attacks upon the judgments of the lower court, and that neither case disturbed the holding of this court in the Denoya case that income accruing to the headright subsequent to the death of the Osage Indian may not be appropriated for the payment of general claims against his estate. In the Tucker case, the court said:

"We conclude therefore the Denoya v. Arrington opinion has been modified to hold that the county courts of Oklahoma have jurisdiction of the payments accruing to the Osage headright subsequent to the allottee's death and prior to the distribution of the estate. The holding of this court to the effect that such payments are not assets of the estate subject to the payment of the claims of creditors was neither criticized nor overruled. The modification as set forth in Bruce v. Evertson, supra, affects only one of the two reasons upon which the above holding was

based. We believe the reason which was not criticized is the more substantial and, in reality, the fundamental reason; that is, that the manifest purpose of Congress, as expressed in all legislation regarding said Osage Tribe, has been to preserve unencumbered and intact the individual Osage Indian's headright interest in the Osage tribal funds and property, and it could not be alienated either directly or indirectly."

The case of Tucker v. Brown, supra, also disposes of the contention of the defendants in error that the income from the headright of a deceased Osage Indian may be used to pay general creditors when the heirs or beneficiaries of the decedent are white persons and are not of Indian blood, for in the case of Tucker v. Brown, the court said concerning this point:

"Nor do we see wherein the fact the widow of the decedent is a white woman should affect our decision herein. It is immaterial to a determination of this case, whether the widow of the decedent can alienate her inherited interest in the deceased's headright or not."

Defendants in error contend that they, as general creditors, are entitled to recover by reason of the fact that an Osage allottee has power and authority to, by will, direct the payment of his debts; that the will of Hugh Kohpay did direct that all of his just debts be paid and that by reason thereof they are entitled to recover. We think the case of In re Big Horse's Estate, 172 Okla. 498, 45 P. 2d 727, holds contrary to defendants in error's contention. In the Big Horse case the will had a specific direction for the payment "out of my estate of all loans made for my benefit by my mother Mrs. Zoah Bradshaw." The court declined to give effect to said provision for the payment of creditors and declined to treat the provision as a devise of the said testatrix's headright or a bequest of the income accruing therefrom after her death.

The defendants in error further contend that they as general creditors are

entitled to recover by reason of the stipulation and agreement entered into by certain heirs of the decedent at the time of the hearing before the Secretary of Interior on application to approve the will, which stipulation and agreement was approved by the Secretary of Interior and provided for distribution among the parties to said stipulation, "after the full payment and discharge of all claims, debts and charges against the same hereafter allowed by the county court of Osage County." Plaintiffs in error answer that the parties are presumed to have contracted within the law, citing Knebel v. Rennie, 87 Okla. 136, 209 P. 414, and that under this rule it must be presumed that by the provision in the stipulation for the payment of debts, the parties intended that the debts be paid only in so far as there were assets in the estate lawfully applicable thereto. We agree with the contention of plaintiff in error, and conclude that the parties to the stipulation of settlement in providing for the payment of debts contracted with reference to the settled rule of law that the income accruing to the headright of an Osage Indian subsequent to his death may not be appropriated for the payment of his debts and therefore contemplated and intended that such be paid only in so far as there were assets lawfully available therefor. In view of our interpretation of the provision of the stipulation, the approval of the stipulation by the Secretary of the Interior does not change the result.

Defendants in error argue in their brief that it is inequitable to use much of the available cash in payment of an allowance to decedent's widow who is not of Indian blood and who was living separate from decedent for many months prior to his death, and in payment of "large executor's and attorney's fees," and then to allow the defendant in error, Nellie Newkirk, who actually furnished the care and support for decedent to receive only a nominal payment. While we are sympathetic to the claim of said defendant in error and realize that the money judgment obtained for the services rendered was well earned, it must be borne in mind that any person who assumes to contract with an Indian, such as in the case at bar, does so subject to any and all restrictions and limitations existing in reference to headrights, and is presumed to know such limitations and cannot under the law and circumstances in this case now be heard to complain.

Defendants in error raise the legal question whether the widow Kathryne Van Duyn Kohpay can be paid the family allowance from the income accruing to the headright of Hugh Kohpay after his death. We need not discuss or decide that question, since in view of our determination here, the defendants in error have no interest in the decision of that question in this case.

The judgment of the district court of Osage county affirming the judgment and order of the county court of Osage county in so far as it provided for payment of defendants in error as general creditors from income accruing to the headright of deceased Osage Indian Hugh Kohpay subsequent to his death, and for said estate to be held open until sufficient funds should accumulate from the quarterly Osage headright payments to pay said claims is reversed and the said district court directed to enter judgment in accordance with the views expressed in this opinion.

This court acknowledges the services of Attorneys Paul Edwards, Roy J. Elam, and J. G. Crowley, who, as Special Masters aided in the preparation of this opinion. These attorneys were recommended by the Oklahoma Bar Association, approved by the Judicial Council, and appointed by the court.

WELCH, CORN, JOHNSON, O'NEAL, and BINGAMAN, JJ., concur.