The GENERAL CREDITORS OF the ES-
TATE of Vera HARRIS, deceased,
Plaintiffs in Error,

v.

J. C. CORNETT, Executor of the Estate of
Vera Harris, deceased and Betty Jeanne
Alexander, Defendants in Error.

Betty Jeanne ALEXANDER,
Plaintiff in Error,

v.

J. C. CORNETT, Executor of the Estate of
Vera Cottingham Harris, Osage Allottee
No. 1100, Deceased, Defendants in Error.

Nos. 40274, 40384.

Supreme Court of Oklahoma.

April 4, 1966.

399

Chas. R. Gray and W. N. Palmer, Pawhuska, for plaintiffs in error, The General Creditors of Estate of Vera C. Harris, Deceased, in No. 40274.

Rucker, Tabor, Shepherd & Palmer, Tulsa, for plaintiff in error, Betty Jeanne Alexander, in No. 40384.

J. C. Cornett and Hamilton, Kane & Kane, Pawhuska, for defendant in error, J. C. Cornett, Executor of Estate of Vera C. Harris, Deceased, in both cases.

HICKS EPTON, Special Justice.

This litigation involves the estate of Vera Cunningham Harris, an Osage Indian Allottee who died testate. It arose in the County Court of Osage County, Oklahoma, where after trial the aggrieved parties appealed to the District Court of Osage County in which trial de novo was had. Appeal was taken from the District Court judgment to this court. The nature of the judgments is reflected in the discussion of the issues.

When appeal was lodged in the Supreme Court, all of its regular members filed their disqualifications to sit in this cause and the Governor of this State, the Honorable Henry R. Bellmon, appointed John Ladner, Hicks Epton, Milton C. Craig, W. E. Maddux, Bruce McClelland, R. Place Montgomery, Reuben K. Sparks, Wilson Wallace, and Walter J. Arnote, to serve as Special Justices of this Court to hear this cause.

Although no formal issues were made up in either the County or District Court of Osage County, Oklahoma, it is clear from the pre-trial proceedings in both trial courts, from the statements of counsel in the record and in the oral arguments to this court and the partial dismissal of appeal heretofore filed in and approved by this court, that the following issues presented to the trial courts remain for decision by this court:

1. Does this Court have jurisdiction to hear this appeal?

2. Which of the several creditor's claims presented to the County Court were properly allowed as debts against the decedent's estate?

3. Were funds available for the payment of those creditor's claims which are determined to be valid and correct charges against the estate of the decedent?

At the outset we are met with the issue of the jurisdiction to hear this appeal. This court has examined its own jurisdiction, as indeed it must, on the matters asserted in the motion to dismiss and on other matters not there asserted; and we have concluded that the appeal was timely filed in this court.

The record in the trial courts lack much to be desired. It is confusing, at times con-

tradictory, extends over many months of time and many hearings, involves separate sets of findings of fact covering the same tangled issues and altogether presents a legal maze seldom if ever compounded in 333 pages of record. On July 13, 1962, with all parties before the court and without any apparent objection to the proceedings the trial court entered an order, which itself is not a model of clarity but nevertheless seems to have set aside all previous findings, orders and judgments and given a fresh start on appeal for all of the parties. The order recites:

"That there had previously been filed and signed by this court two separate judgments in this matter, each filed on a different date. That it is the desire and intent of the parties to appeal from a final judgment of this court, and such should be a single judgment combining all findings of fact and law by the trial court in this matter."

The Trial Court then decreed:

"It is Therefore Ordered, Adjudged and Decreed By the Court that the combined journal entry of judgment in this matter, and all other journal entries of judgment previously prepared by the various parties and signed by this court are specifically set aside and held void."

Thereupon a new "journal entry of judgment" was filed. It is obvious to us that the trial court and all of the parties were using the phrase "journal entry of judgment" as synonymous with the judgment itself. Otherwise we find no explanation for the order of July 13, 1962. The order is ambiguous. Apparently the parties construed it in the light we have suggested because no motion to dismiss was filed with this court until it questioned its own jurisdiction and called for briefs on the question from the parties.

All agree that if the order of July 13, 1962 is to be interpreted as we have done the appeal was lodged within the time allowed by law. The interpretation of the parties to a judgment which is ambiguous, like the interpretation of an ambiguous contract, should be given weight by the court.

Likewise, the circumstances surrounding the making of the Judgment may be considered. The rule is stated in Freeman On Judgments, Vol. 1, 4th Edition, Article 76 pp. 132–133:

"In construing the provisions of a judgment the usual canons of construction should be applied. * * * In construing any portion of the language of a judgment, while it should be taken in its ordinary legal meaning, it must be considered in connection with its context and the judgment as a whole, and the circumstances surrounding the making of the judgment—the condition of the cause in which it was rendered."

This we have done in resolving the issue of jurisdiction in its favor. We therefore hold that the appeal was timely filed and that this court has jurisdiction to determine the remaining issues before it.

We next proceed to a consideration of the validity of the creditor's claims. Both County Court and District Court allowed all of the claims but the District Court held funds were not available for their payment.

In all 14 separate creditor's claims were presented to the executor, approved by him and thereafter approved by the County Court. Of these claims those of Hotel Pharmacy, and Pawhuska Hospital were for last illness. The Hotel Pharmacy claim shows to have been presented to the executor on March 16, 1961, and actually paid on that date; however, it was not presented to nor approved by the County Court until March 28, 1961. Although vigorous attack is made on the claim in this court no specific objection seems to have been lodged to it in the court below. It is contended here that approval of the County Court was not timely endorsed on the claim. We do not interpret the Statute, 58 O.S.A. § 337 to require approval by the County Court within 10 days from the presentation to the executor. Since all parties agree the claim arose out of the last illness of the

decedent, the reasonableness of the claim is not questioned and no specific objection was made to it in the court below because of the failure of the County Judge to approve the claim within ten days of its presentation to and approval by the executor, we need not decide whether this was improper, or if so its legal effect, because we conclude no successful attack may here be made on it when the issue was not raised below.

The claims of Johnson Funeral Home for burial of the decedent in the amount of $1,706.92 was not attacked in the court below and no good reason is herein indicated why it should not have been approved. Likewise the claim of Osage Marble and Granite Works in the original amount of $765.00 was allowed by the Executor and the County Court for only $150.00. No specific attack was made below and none is here made and that claim likewise is sustained.

The claims of Handy Grocery, Dowdy's Grocery and C. R. Anthony Company were not questioned in the court below and cannot here be challenged.

We now approach the issue as to availability of funds for the payment of these claims. The decedent, Vera Harris, was an Osage Indian of the 1/16th Indian blood who has a certificate of competency. Section 4 of the Osage Act of Congress of March 2, 1929 (45 Stat. 1480, 25 U.S.C. note to Section 331) provides that upon the death of an Osage Indian of one-half or more of Indian blood who does not have a certificate of competency the Secretary of Interior shall pay from the decedent's funds "all lawful indebtedness and cost and expense of administration." Pertinent to this appeal this statute further provides:

"Upon the death of any Osage Indian of less than one-half of Osage Indian blood or upon the death of an Osage Indian who has a certificate of competency, his monies and funds and other property accrued and accruing to his credit shall be paid and delivered to the administrator or executor of his estate to be adminis-

tered upon according to the laws of the State of Oklahoma * * *."

Since Vera Harris had less than one-half Indian blood and also had a certificate of competency her estate falls within the purview of this statute. Her estate was subject to administration in the usual manner by the probate court of Osage County.

The decedent died on September 22, 1960. Osage Headright payments, including that of the decedent, began to accrue on July 1, 1960 and were fully accrued on September 30, 1960. Agreeable to the custom and practice of the Osage Indian Agency these quarterly payments were segregated during the quarter immediately following their accrual. Here the quarterly payment for July, August and September, 1960, was actually received by the executor and deposited in his account on March 2, 1961. The County Court determined that the sum of $1,217.92 had accrued prior to the date of decedent's death and that this sum was an asset of her estate subject to the payment of the claims of general creditors; that this sum together with a further sum of $100.73 or a total of $1,318.65 was available for the payment of claims of general creditors.

The District Court on appeal likewise determined that these claims were valid but because the executor had used the proceeds from the current and accruing quarterly Osage payment for payment of funeral bills and expenses of last illness held there were no funds legally available for that purpose.

Wherever conflict may yet exist between the holding of this court in Denoya v. Arrington, 163 Okl. 44, 20 P.2d 563 and Bruce v. Evertson, 180 Okl. 111, 68 P.2d 95, Tucker v. Brown, 185 Okl. 234, 90 P.2d 1071, in re Kohpay's Estate, 206 Okl. 548, 245 P.2d 79 with the decision in Globe Indemnity Company v. Bruce, 81 F.2d 143, 10th Cir. (certiorari denied 297 U.S. 716, 56 S.Ct. 591, 80 L.Ed. 1001) we need not decide. Under the view we take of the matter these claims were payable under either rule.

The record is clear the executor used the monies which were available and sufficient for the payment of general creditors to pay

expenses of the last illness and funeral expenses when any and all of the estate of the decedent was available for these purposes.

Plaintiff in error, Betty Jeanne Alexander, argues that the funeral claim is the claim of a general creditor and cites in support of this argument Lang v. Banner, 189 Okl. 606, 118 P.2d 639. The language of that case must be read in the context of its facts. In it the son of a decedent mother paid the funeral claim and thereafter filed claim therefor not against his mother's estate but against the estate of claimant's stepfather. Under the circumstances claimant was of course a general creditor as against his stepfather's estate although he might well have been a preferred creditor, as subrogee of the original preferred creditor, of his mother's estate. But we have here a situation where the executor paid a preferred claim out of funds which were available for the payment of the general creditors. Later the executor received other funds during the administration out of which the preferred claim could have been paid.

 It is the duty of an executor or administrator to protect the claimants in an estate. In a sense he holds all receipts in trust for the payment of the debts of the decedent. See 21 Am.Jur. p. 375 and Scholtz v. Hazard, 68 Colo. 343, 191 P. 123. The executor here could have paid all of these general claims out of funds clearly available therefor and have paid the funeral expenses out of quarterly payments accruing after the death of the decedent. In that manner all just claims could have been paid in regular order. The executor, having mistaken the applicable law used funds which were clearly available for the general creditors in the payment of the preferred claim. We hold that when the executor later received in his hands monies available for the payment of the funeral expenses (which already had been paid out of funds otherwise available to the general creditors) this reimbursement of his accounts accrued to the benefit of the general creditors and marshalling of assets may

here be used, in retrospect, so as to bring about a legal subrogation.

The general rule is found in 50 Am.Jur. 678–9, 680–1, as follows:

"Subrogation, frequently referred to as the 'doctrine of substitution', may be broadly defined as the substitution of one person in the place of another with reference to a lawful claim or right. It is a device adopted by equity to compel the ultimate discharge of an obligation by him who in good conscience ought to pay it. * * *

Legal subrogation is a creature of equity not depending upon contract, but upon the equities of the parties. In its more usual aspect, it arises by operation of law where one having a liability or a right or a fiduciary relation in the premises pays a debt owing by another under such circumstances that he is in equity entitled to the security or obligation held by the creditor, whom he has paid.

Legal subrogation, as distinguished from conventional subrogation, is a creature of equity, existing independently of custom or statute, although there are in some jurisdictions statutory provisions dealing with the matter. Legal subrogation does not depend upon contract, assignment, privity, or strict suretyship. It is not created by the order of the court recognizing it, but follows as the legal consequence of the acts and relationship of the parties."

The Oklahoma legislature has attempted to state this rule, in one of its aspects, in 24 O.S.A. § 4 as follows:

"Where a creditor is entitled to restore (resort) to each of several funds for the satisfaction of his claim, and another person has an interest in or is entitled as a creditor to resort to some but not all of them, the latter may require the former to seek satisfaction from those funds to which the latter has no such claim, so far as it can be done without impairing the right of the former to complete satisfaction, and without doing injustice to third persons."

In Hartford Accident and Indemnity Company v. First National Bank and Trust Company of Tulsa, 287 F.2d 69 (10th Cir.), it is said:

"Subrogation has its genesis in equity and its major objective is to effectuate the ultimate discharge of an obligation by the one who in good conscience should discharge it. Its function is to effectuate complete justice as between the litigating parties. Though based on equity, subrogation is frequently enforced in actions at law. The right does not arise out of contract. It usually arises where one party has the equitable right to step into the shoes of another in respect to rights against a third party."

In Richardson v. American Surety Co., 97 Okl. 264, 223 P. 389 this court said:

"No doctrine of equity jurisprudence is more beneficient in its operation than is subrogation, and perhaps none stands in higher favor. No general rule can be laid down which will afford a test in all cases for its application, and its exercise depends upon the particular facts and circumstances of each case, and is not enforced as a matter of legal right, but in order to subserve the ends of justice in the particular controversy under consideration."

■ We hold that in this case the doctrine of equitable subrogation applies and that these general creditors' claims were and are payable from the funds received by the executor which replaced those used by him in the initial payment of the funeral bill and which otherwise would have been available for the payment of these general creditors' claims. The executor will pay these general claims in the amounts allowed.

This cause is reversed and returned to the District Court of Osage County, Oklahoma for further proceedings not inconsistent herewith.

Judgment reversed

MILTON C. CRAIG, W. E. MADDUX, BRUCE McCLELLAND, R. PLACE MONTGOMERY, REUBEN K. SPARKS, and WILSON WALLACE, Special JJ., concur. JOHN LADNER, Special C. J., concurs in result.

WALTER J. ARNOTE, Special Judge.*

JOHN LADNER, Special Chief Judge (concurring specially).

I concur in the result of the majority opinion in general and also in the result reached that this court has jurisdiction of this appeal, but I respectfully cannot concur in the following conclusion of fact and law in the majority opinion as a basis of jurisdiction of this appeal:

"All agree that if the Order of July 13, 1962 is to be interpreted as we have done" (to constitute, with the combined Journal Entry signed the same day, a new judgment as of that date), "the appeal was lodged within the time allowed by law * * * [and] this court has jurisdiction."

I believe this is an unwarranted conclusion of fact and law, especially since no one attempted to appeal from any order or judgment of July 13, 1962. However, in view of the confused records in these cases and in the interest of brevity and since there is another and a sound ground upon which to rest the jurisdiction of this appeal, I will not specify any further errors about this jurisdictional conclusion of the majority.

The appeal of Betty Jeanne Alexander, No. 40384 herein, was on motion of said appellant by order of this court dismissed on January 6, 1965, so we are only concerned with the appeal of The General

* The Honorable Walter J. Arnote was also a special member of this court appointed with the other eight special members and actively participated and served as such until his sudden death on August 13, 1965. Judge Arnote was a distinguished trial lawyer as evidenced by his Fellowship in the American College of Trial Lawyers. He was a former President of the Oklahoma Bar Association. He was a profound legal scholar. The other special members of the Court acknowledge their indebtedness to him and their personal sorrow at his death.

Creditors, No. 40272 herein. The other ground to sustain the jurisdiction of this remaining appeal by The General Creditors arose and is as follows.

On December 5, 1961, the executor of said estate filed in the county court a combined "Petition to Approve Final Account, Determine Heirship and Order Distribution of Assets of Estate". On January 2, 1962 The General Creditors filed "Application for Payment of Claims" alleging "that the executor has filed his Final Account herein and is attempting to close the administration proceedings without payment of the claims of The General Creditors", and prayed "that the executor be required to pay from the funds in his hands their claims". The district court on appeal and trial de novo on said papers or pleadings on June 8, 1962 rendered judgment allowing the claims of The General Creditors but refused to direct payment of the same on the ground that there were no unrestricted funds available to pay such general claims.

The General Creditors filed a Motion for New Trial which was on June 27, 1962 overruled; "to which" they excepted and gave notice of appeal, were given extension of time to make, serve and settle case-made. However, on July 6, 1962 they filed notice of appeal "on the original record" under 12 O.S.(1961) 956.1, et seq., "from the order, decree and judgment rendered herein against them on the 27th day of June, 1962". Said appeal was filed in this court on September 21, 1962.

The determining issue is: Was The General Creditors' motion for new trial necessary to review the order or judgment of the District Court entered June 8, 1962, which denied their "Application for Payment of Claims" and which application was also filed in response and as objection to executor's final account and petition to determine heirs and distribution of assets. If such motion was necessary, then their appeal from the order of June 27, 1962 overruling it was filed within the required 90 days from said date; but if such motion was not necessary, then their appeal from the order or judgment of June 8, 1962, was not filed within such required time.

The contention of General Creditors is: Where there are contested questions of fact decided by the trial court, a motion for new trial is necessary to appeal regardless of the nature of the matters heard. In support of this they cite a number of Oklahoma cases. This rule is correct if applied to a civil action or other proceeding when issues of fact arise on pleadings and result in a trial and judgment. The cases cited by appellants are all such cases. The rule is otherwise if issues of fact arise on a motion resulting in a hearing and order. This distinction has been based largely upon the definitions, contained in our Code of Civil Procedure, of: pleadings—trial—issues—new trial—judgment—motion—order, as defined in 12 O.S.(1961) 263, 551, 552, 554, 651, 681, 1110, 1116. There are two types of cases where this court has applied this latter rule, and has held in various matters that where controverted facts arose upon a motion resulting in a hearing and order (not upon pleadings, trial and judgment), a motion for new trial was not necessary and did not extend the time of appeal.

The *first type* of such cases generally involved various matters incidental or supplemental to a regular civil action or special proceeding, such as the following: Powell v. Nichols, 26 Okl. 734, 110 P. 762, 29 L.R.A., N.S., 886 (First Oklahoma case. Motion and order as to validity of execution issued on judgment.) Ginn v. Knight, 106 Okl. 4, 232 P. 936; (motion and order as to cancellation of credit on judgment.) Grimes v. Ward, 179 Okl. 5, 64 P.2d 894. (Objection and order on confirmation of execution sale.) Fliedner v. Hinchee, 157 Okl. 90, 11 P.2d 110. (Motion and order as to vacating judgment.) Wilkinson v. Thomas, 175 Okl. 351, 52 P.2d 726. (Motion and order as to distribution of funds held by Bank Commissioner in court liquidation action.) Liese v. Hadden, 191 Okl. 666, 132 P.2d 654. (Objections and order on commissioner's report in partition action.) Taylor v. Taylor (Okl.), 387 P.2d 648. (Motion and order

modifying divorce decree as to child custody) wherein the court "observed * * * that this appeal was taken prior to the effective date of 12 O.S.1961 § 651, as amended in 1963." This 1963 amendment applies only "in cases where judgment was rendered after" the opinion in Poafpybitty v. Skelly Oil Co. (July 7, 1964) (Okl.), 394 P.2d 515, became final; hence does not apply in this appeal, although it would apply to all judgments and *orders* rendered after said date. Stokes v. State (Okl.), 410 P.2d 59.

The *second type* of such cases generally involved various matters incidental or supplemental to a probate case, such as the following: In re Baptiste's Guardianship, 125 Okl. 184, 256 P. 520 (application for attorney fees), held:

"Having determined the action arose on a motion after a hearing thereon resulted in an order of the court, the question of the necessity for a motion for new trial has been settled by this court by an unbroken line of decisions from Powell v. Nichols et al., 26 Okl. 734, 110 P. 762, 29 L.R.A.(N.S.) 886, to the present time."

French v. Boles, 128 Okl. 90, 261 P. 196 (same kind of application and order as Baptiste case); In re Butler's Guardianship, 130 Okl. 241, 266 P. 1106 (guardian's annual account, order approving it and to reinstate guardian). The court said and held:

"The Code of Probate Procedure in this state is largely taken from the Probate Code of California, in which state it has been held that it is the duty of the court to carefully examine the accounts of guardian, regardless of objections, to scrutinize the account, correct all errors, reject all items of credit which appear illegal or excessive, and generally to inquire into the truthfulness and accuracy of the items of charges and credits and of the facts alleged in the report. In re Boyes' Estates, 151 Cal. 143, 90 P. 454.

"The filing of exceptions and objections thereto is but an aid to the court. In In re Franklin's Estate, 133 Cal. 584, 65 P. 1081, it is held no issue is formed by objections to an annual account of executor; that a motion for new trial does not extend the time in which to file appeal from an order settling the same. * * *

"From the foregoing statutes and citations we determine that the account filed by the guardian *herein* is not a pleading but is an exhibit and that the examination thereof by the court is not a trial, and that the action of the court therein appealed from herein is an order allowing such account, and that the motion for new trial, bringing the error complained of before the trial court for review, was unnecessary, and the filing of such unnecessary motion for new trial did not extend the time in which to file the appeal in this court."

In re Williamson's Estate, 188 Okl. 157, 107 P.2d 192 (executor's *final account*), after citing some of above cases, held:

"The appeal must be dismissed under the above authorities. Plaintiffs in error urge that these cases are not authority for the rule in a proceeding on the *final account*. We do not find that this court has made any distinction as to the nature of the account, but simply lays down the rule that the proceeding on appeal from the account is not a trial and does not require any motion for new trial."

Wimbish v. Dixon, 193 Okl. 550, 143 P.2d 616 (guardian's "final report" and guardian's and attorney's fees), followed the Williamson case. This court had not had occasion to consider any case involving a *final account* prior to the Williamson case; and neither that nor the Wimbish case considered the possible distinction between an annual and *final* account nor considered the statutes and cases hereafter cited.

Appellee, J. C. Cornett, executor, in his brief relies upon the rule announced and applied in the above cases, especially the probate cases. It will be noted, however,

that all of the above probate cases involved annual or final fiduciary *accounts* or *applications* for fiduciary fees or attorney fees, which were rather incidental to the main case. This court has never passed upon the necessity of a motion for new trial to review, on appeal from the district court to the supreme court, an order or judgment arising on objections to a *petition for final distribution* or on an *application for payment of claims*, such as are involved in this appeal. In re Fullerton's Estate (Okl.), 375 P.2d 933, recognizes this fact.

It is important that in the leading Oklahoma probate case involving an annual account (In re Butler's Guardianship, supra.) cited by appellee, the court said: "The Code of Probate Procedure, in this state is largely taken from the Probate Code in California", and based its decision primarily on In re Franklin's Estate, 133 Cal. 584, 65 P. 1081, which also involved an *annual* account. However, the California Supreme Court therein held and said:

"[A] motion for a new trial does not apply to a probate order settling the annual account of an executrix. * * *

"In the Bauquier Case the only question involved was whether a motion for a new trial was proper in a proceeding inaugurated by the written petition of appellant therein for the probate of a certain will, and her appointment as executrix thereunder, and written opposition to her appointment on the ground of incompetency; and it was held that, as the action of the court was invoked as to matters of fact which were 'presented to it for determination in the form of pleadings' a motion for a new trial was the proper proceeding." * * *

And in Carter v. Waste, 159 Cal. 23, 112 P. 727, the same court, after referring to their statutes which made the provisions relating to new trial in civil actions applicable to all probate proceedings "except in

so far as they are inconsistent with the provisions of this title", held:

"Thus it is held that a motion for a new trial will not lie where the court has made an order granting or refusing a family allowance, or setting apart or refusing to set apart property as exempt, or as a homestead. Leach v. Pierce, 93 Cal. 614, 29 Pac. 235; Shipman v. Unangst, 150 Cal. 425, 88 Pac. 1090; Estate of Heywood, 154 Cal. 312, 97 Pac. 825. The same ruling has been made as to an order settling the *annual* account of an executor or administrator. (Estate of Franklin, 133 Cal. 584, 65 Pac. 1081). * * * It has been assumed without question that a motion will lie in proceedings for *partial distribution* (Estate of Ryer, 110 Cal. 556, 42 Pac. 1082) and in proceedings on *final distribution* (Estate of Walker, 148 Cal. 162, 82 Pac. 770), and it has been so held as to the latter proceeding by the Supreme Court of Montana, upon statutes practically identical with ours.

"We are satisfied that it must be taken as established in this state that, under our law as it now exists, a motion for a new trial of any issue of fact actually made and determined in any proceeding in probate will lie when the law expressly authorizes issues of fact to be framed in such proceeding, and that provisions authorizing written objections on the part of persons interested in the estate and providing for the hearing and determination of those objections do expressly authorize issues of fact to be framed." * * *

In re Stinger's Estate, 61 Mont. 173, 201 P. 693, involving facts similar to those in the present appeal, made the same distinction and reached the same conclusion as the California cases supra. The court said:

"The clear meaning of the probate statutes is that, when formal pleadings are filed presenting issues of fact, the parties

should proceed to a formal trial, and, upon the determination of the issues of fact by the court, the aggrieved party may move for a new trial the same as in other cases."

Our statute (12 O.S.(1961) § 984) in effect is the same, with respect to motions for new trial, as the California and Montana statutes referred to in the above cases.

In re Michaux's Estate, 171 Kan. 417, 233 P.2d 510, the court said and held:

"Generally speaking it can be said there can be no question in this jurisdiction that trial errors such as are here involved are not subject to appellate review in the absence of a motion for a new trial in the court below. * * * Appellant argues the rule is limited to actions commenced in the district court and has no application to a probate proceeding which is appealed to the district court and thereafter determined by that tribunal. The fallacy of this argument appears in the probate code itself. See G.S.1949, 59–2408, which provides that the district court shall proceed to hear and determine an appeal from probate court *de novo* and in doing so shall have and exercise the same general jurisdiction and power as though the controversy had been commenced by action or proceeding in such court and as though it had original jurisdiction. We are therefore constrained to hold that upon appeal to the district court from an order from a decision of the probate court refusing to set aside an order of *final settlement and distribution* the cause is tried in conformity with the rules of civil procedure and that parties desiring to appeal from the judgment rendered therein must file and obtain a ruling on a motion for a new trial before this court can review trial errors such as are here involved."

This case is of special significance because our civil procedure statutes, including those relating to new trials and appeals, were largely adopted from Kansas. Also the pertinent part of the Kansas probate statute, as to trials *de novo* in their district courts, is practically identical with ours. 58 O.S.(1961) § 735.

In In re Miller's Estate, 182 Okl. 534, 78 P.2d 819, this court said:

"Said section" (58 O.S.(1961) 735) "is a part of the chapter on general probate procedure and applies to appeals on all matters *arising on final distribution*, which includes the determination of heirs of the estate of an intestate", and assumed the motion for new trial filed therein was necessary but was defective because "the motion for new trial did not mention the omission" (of specific findings) "and seek a new trial by reason thereof. The assignment will therefore receive no further consideration."

In view of all of the foregoing, I conclude that a motion for new trial is necessary to appeal from the district to supreme court in any probate proceeding if the law requires or authorizes contested issues of fact to be joined, and they were joined, upon formal or informal pleadings resulting in a trial and judgment (rather than upon a motion, hearing and order); especially if the matter involved constitutes a basic or primary proceeding in such probate case, rather than being merely incidental or supplemental thereto.

The contested issues of fact in the instant case were joined, tried and adjudged upon informal, if not formal, pleadings, namely, the final account and petition for final distribution, the General Creditors' application for payment of their allowed claims, which application was also filed in response and as objections to said petition. And courts "consider the substance of a pleading rather than the title" thereof to determine its nature and effect. White v. Mitchell, 206 Okl. 151, 241 P.2d 407. Such pleadings were required or authorized under our law. 58 O.S.(1961) §§ 553, 554, 555, 631. These sections must be construed together. Crawford v. LeFevre, 177 Okl.

508, 61 P.2d 196. Of course the pleadings in probate cases in the county and district courts were never intended to be as formal as in ordinary civil actions. But:

"All issues of fact joined in the county court must be *tried* by said court" * * and "If the issues are not sufficiently made up by the written pleadings on file, the court, on due notice to the opposite party, must settle and frame the issues to be tried, and upon which the court may render *judgment*." (58 O.S.(1961) § 709).

It follows that The General Creditors' motion for new trial was authorized and necessary for their appeal, and since it was overruled June 27, 1962, and their appeal filed herein September 21, 1962, it was filed within 90 days as required by 12 O.S. (1961) § 956.2, and this court has jurisdiction of said appeal.