**HARTFORD ACCIDENT AND INDEMNITY COMPANY, a corporation, Appellant,**

v.

**FIRST NATIONAL BANK AND TRUST COMPANY OF TULSA, OKL., a national banking association, Appellee.**

**No. 6436.**

United States Court of Appeals Tenth Circuit.

Jan. 21, 1961.

---

Jack N. Hays, Tulsa, Okl. (Gable, Gotwals & Hays, Tulsa, Okl., was with him on the brief), for appellant.

Hess Crossland, Tulsa, Okl. (Conner, Winters, Randolph & Ballaine, Tulsa, Okl., was with him on the brief), for appellee.

Before BRATTON, PICKETT and BREITENSTEIN, Circuit Judges.

BRATTON, Circuit Judge.

Hartford Accident and Indemnity Company instituted this action against First National Bank in Bartlesville, Oklahoma, and The First National Bank and Trust Company of Tulsa, Oklahoma. The bank in Bartlesville cross-claimed against the bank in Tulsa. On application of Hartford, the action was dismissed without prejudice as to the bank in Bartlesville; and on application of the bank in Bartlesville, the cross claim was dismissed. As between Hartford and the bank in Tulsa, the cause was submitted on admissions, stipulations, and written exhibits. Findings of fact and conclusions of law were made; judgment was entered denying recovery against the bank in Tulsa; and Hartford brought the cause here on appeal.

The action had its origin in these facts and circumstances. Hartford was surety on an employees' fidelity bond in favor of Phillips Petroleum Company. Harrell L. Strimple was an employee of Phillips, and the bond covered fraud or dishonesty on his part. Extending over a period of more than sixty days, Strimple from time to time prepared and placed in the inter-office mail of Phillips ten false and fraudulent pay orders referred to as pink letters on which he had forged the name or initials of persons who would normally issue or approve such letters. These letters resulted in the preparation by other employees of ten drafts drawn on Phillips payable through the bank in Bartlesville. Three of the drafts named A. G. Wallett and Bruce L. Jennings as payees, and seven named Jennings as payee. There were no such persons and Phillips owed no payments to any person named Wallett or Jennings. The drafts were mailed in envelopes addressed to Jennings at the Mayo Hotel in Tulsa. Arvel Montgomery Moser was an outside confederate of Strimple. He obtained the drafts from the hotel, endorsed them using the name or names of the payees, and deposited all of them except one in the name of Jennings in the bank at Tulsa. He cashed one at the bank. The bank in Tulsa endorsed the drafts with the usual banker's endorsement in which previous endorsements were guaranteed and forwarded them to the bank in Bartlesville. The drafts were paid by Phillips through the bank in Bartlesville, and the proceeds were received by the bank in Tulsa. The record fairly lends itself to the inference that while representing himself to be Jennings, Moser gave to the bank in Tulsa the name of a bank in Kentucky as a reference. The bank in Tulsa made two inquiries of the bank in Kentucky concerning Jennings. The response to the first inquiry was a notation "no credit exp."; that to the second inquiry was a notation "no record in checking"; and the matter was seemingly not pursued further. Except for a specified balance, the proceeds of the drafts were withdrawn from the bank in Tulsa on checks with the name Bruce L. Jennings signed thereto. After discovery of the fraud, the specified balance was paid to Phillips upon a check payable to its order with the name Bruce L. Jennings appended thereto. That was done pursuant to a suggestion of the bank in Tulsa that it be handled in that manner. Hartford paid to Phillips its loss, obtained reimbursement for part of the loss, and instituted this action to recover the difference between its outlay and intake.

The primary ground of attack upon the judgment is that the court erroneously applied to the case the doctrine of superior equities; erroneously concluded that Hartford did not have superior equities to those of the bank in Tulsa; and erroneously concluded that in such circumstances, Hartford was not entitled to recover. Subrogation has its genesis in equity and its major objective is to effectuate the ultimate discharge of an obligation by the one who in good conscience should discharge it. Its function is to effectuate complete justice as between the litigating parties. Though based on equity, subrogation is frequently enforced in actions at law. The right does not arise out of contract. It usually

72

arises where one party has the equitable right to step into the shoes of another in respect to rights against a third party. And in such circumstances, the party asserting the right is subject to all legal and equitable defenses which the third party may have against the party into whose shoes the subrogee steps. In other words, the subrogee does not have any better right against the third party than had the party into whose shoes he stepped. The essence of the doctrine and many cases in which the right has been granted or denied, some being cases in which the asserted liability of the third party was based upon tort and others in which such liability was based upon contract, will be found in Standard Accident Insurance Co. v. Pellecchia, 15 N.J. 162, 104 A.2d 288. In that case, a surety company which had issued to a trust company two fidelity bonds given to protect the trust company against loss arising out of fraud or dishonesty of its officers and employees paid certain losses which the trust company suffered by fraudulent and dishonest acts and conduct of an officer; and then as subrogee, the surety company sought judgment against another trust company on its endorsements with prior endorsements guaranteed on checks used as a means of effecting the loss arising out of the fraud and dishonesty. Summary judgment in favor of the trust company which had placed its endorsement on the checks was reversed upon the ground that the burden of proof rested upon it to show that the insured trust company had engaged in unconscionable conduct.

But jurisdiction in this case was based upon diversity of citizenship with the requisite amount in controversy. Therefore, the substantive law of Oklahoma governs respecting the rights of the parties, and the doctrine of superior equities was applied with decisive effect in a case in that state quite similar to this one. Fourth National Bank of Tulsa v. Board of Commissioners, 186 Okl. 102, 95 P.2d 878, 879. There a surety company signed as surety the official bond of a county treasurer. The treasurer deposited in the bank certain bonds, some being the property of the county and others belonging to a school district. The bonds were later exchanged for other bonds and the county suffered a resulting financial loss. The exchange was wrongful for the reason that the treasurer did not have authority in law to make it. Neither the board of commissioners nor the surety company took any part in the exchange. But the bank participated actively in it. The surety company paid a specified amount to the county in settlement of the loss, and then the surety company as subrogee of the county and the board of commissioners joined in instituting the action against the bank. While recognizing that the bank did not have actual knowledge of the fact that the treasurer was without authority in law to make the exchange, the court held that it was charged with constructive knowledge of the statutes of the state which vested in the board of county commissioners and the municipal board of education legal authority to sell such bonds, respectively, but not for less than par. The court further held that the exchange constituted a conversion of the bonds by the bank and the treasurer. The court stated that the question presented was whether the surety had equities superior to those of the bank. But when the opinion is considered in its entirety, it is manifest that in making that reference to the surety company, the court referred to it as the subrogee of the county. And the court found no difficulty in applying the doctrine. Treating the surety as subrogee of the county, taking into consideration the fact that the county did not participate in the exchange of the bonds which amounted to a conversion, and taking into consideration the further fact that the bank participated actively therein, the court held that the surety company had equities superior to those of the bank and, therefore, should recover. When the question is viewed in the light of that case, we entertain no doubt that the court was correct in applying the doctrine in this case.

Hartford seeks to weaken the impact of Fourth National Bank of Tulsa v. Board of Commissioners, supra, on the ground that statements made therein respecting the doctrine of superior equities were dictum. We do not share that view. But assuming that the opinion does contain dictum, it was stated in the syllabus prepared by the court that unless "the equities of the party seeking subrogation are superior to those of the party against whom subrogation is sought it must be denied." The syllabus was adopted by the court; it has not been overruled; and it is a part of the law of the state. City of Altus v. Martin, Okl., 268 P.2d 228. Moreover, in a case in which jurisdiction rests upon diversity this court will ordinarily follow well-considered dictum of the highest court of the state if it appears to be a clear and unequivocal exposition of law and is not at variance with other decisions of the court. Home Royalty Association v. Stone, 10 Cir., 199 F.2d 650.

The substance of the further attack upon the judgment is that in any event the equities of Hartford were superior to those of the bank in Tulsa. It is argued that Hartford was an innocent party; that there were no equities against it; that it did not come into the picture until after all of the wrongdoing had transpired and ended; that the bank made inquiry about Jennings and received unsatisfactory responses; that the bank had an opportunity to identify the endorser of the checks and failed to do so; that it is to the interest of society to place the burden of the loss upon the bank; and that so placing such burden will in the long run lead to greater security in commercial transactions. Hartford did not participate in the wrongdoing, and it did not come into the picture until after all wrongdoing had taken place and ended. But when it did come, it came as subrogee of Phillips; it stepped into the shoes of Phillips; it did not acquire any greater rights than Phillips previously had; and Phillips was not free of fault. The mischief had its origin in the offices of Phillips. The pink letters were prepared, forged, and processed from beginning to end in the offices of Phillips. The checks were prepared and issued there. Envelopes were addressed to the fictitious person and the checks placed in such envelopes there. And the envelopes were placed in the mails by employees of Phillips. Except for these developments, the checks would not have reached the hands of Moser; would not have been deposited in the bank at Tulsa; would not have been endorsed by such bank; would not have been paid through the bank at Bartlesville; and no loss would have occurred for anyone to bear. In short, a succession of developments taking place in the offices of Phillips set in motion a chain of circumstances which resulted in the loss for which the surety company as subrogee of Phillips seeks judgment against the bank. When all of these facts and circumstances are considered together, we are unable to agree that the equities of Hartford were superior to those of the bank.

The judgment is affirmed.