LAWYERS' TITLE GUARANTY FUND, a Foreign Corporation, and the St. Paul Insurance Companies, Appellants,

v.

David H. SANDERS and Mary E. Sanders, husband and wife, Appellees.

No. 50221.

Supreme Court of Oklahoma.

Nov. 8, 1977.

James M. Hinds, Edgar, Manipella & Hinds, Tulsa, for appellants.

Rucker, Tabor, McBride & Hopkins, Inc., M. Darwin Kirk, Tulsa, for appellees.

## PER CURIAM:

Tulsa residents, David H. and Mary E. Sanders (sellers), appellees, sold some out of state real property. After completion of the sale, including a conveyance of the property that contained a warranty, buyers discovered there was an unsatisfied lien against the property. In his title examination and opinion, buyers' out of state attorney failed to advise, or make a requirement, as to this unsatisfied lien. In settlement of a resulting malpractice claim, the attorney's malpractice insurers, Lawyers' Title Guaranty Fund and the St. Paul Insurance Companies (insurers), appellants, furnished the monies used by the buyers to satisfy the outstanding lien.

Insurers brought suit against sellers for breach of warranty contained in the real estate conveyance caused by the unsatisfied lien, claiming subrogation to buyers' cause of action. Subrogation was based on satisfaction of the outstanding lien realized by the buyers in settlement of the buyers' malpractice claim. Trial court sustained a general demurrer to the petition and dismissed.[1] Insurers appeal.

---

1. Although argued in sellers' brief, the trial court did not rule on the statute of limitations problem raised by sellers through a special demurrer filed with the general demurrer. Trial court's order sustaining the general demurrer reflects the ruling was based on the exist-

Sellers argue (1) insurers' subrogation is limited to claims of their own insured, the title attorney, which are non-existent against sellers; and (2) no privity, or contract, as between insurers and buyers for subrogation of buyers' claim against sellers.

▮ There are two kinds of subrogation, (1) legal or equitable; and (2) conventional. Conventional subrogation comes from a contract or agreement, expressed or implied. *Jorski Mill & Elevator Co. v. Farmers Elevator Mut. Ins. Co.,* 10th Cir., 404 F.2d 143, 147 (1968).[2] Legal subrogation is a creature of equity, not depending upon contract, but upon the equities of the parties. It is not dependent upon assignment, privity, or strict suretyship. *General Creditors of Estate of Harris v. Cornett,* Okl., 416 P.2d 398, 400 (1966). This principle is a fluid concept depending upon the particular facts and circumstances based on natural justice of placing the burden of bearing a loss where *it ought to be,* and without the form of a rigid rule of law. *Sutton v. Jondahl,* Okl.App., 532 P.2d 478, 482 (1975).[3]

▮ Here, insurers do not seek conventional subrogation to the claims of their insured through their insurance contract, but legal subrogation to the claims of the buyers based on the equities of the parties. In sustaining the general demurrer, the trial court found lack of superior equity in the insurers as over the sellers. We disagree.

Sellers breached the contractual duties encompassed by the provisions of the warranty deed and for that reason buyers suffered a loss. The burden of the loss buyers sustained was shifted to insurers when it became apparent their insured breached his duty of care to the buyers. In honoring the contractual obligation to indemnify their insured, insurers are not, as to the payment of the lien obligation, mere volunteers. Their interest is real, pecuniary and obligatory. The question is, therefore, as between these parties, insurers and sellers, which in equity should bear the greater responsibility for the loss? Sellers sold the property without applying the proceeds of the sale to the outstanding lien obligation. Sellers of necessity received more net proceeds from the real estate sale than that to which they were entitled. Implicit in the foregoing is the conclusion that sellers received an unjust enrichment as a result of their breach of warranty.

Under the circumstances in this particular case, and as between the two parties here, natural justice places the burden of bearing the loss where it ought to be, on the sellers, who breached their warranty and were unjustly enriched. The trial court erred in sustaining the general demurrer and dismissing.

**REVERSED AND REMANDED FOR FURTHER PROCEEDING.**

---

ence of superior equity as between the parties rather than the limitation problem. Without the trial court having ruled on that issue, we do not have it before us on this appeal.

2. At p. 147, the opinion discusses the kinds of subrogation and reads in part:

"* * * Indeed, there are two kinds of subrogation, (1) legal or equitable, and (2) conventional. Conventional subrogation arises only by reason of an express or implied agreement. The statements in *Hartford Accident & Indemnity Co. v. First Nat. Bank & Trust Co.,* 10 Cir., 287 F.2d 69, 71; *Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 137, 83 S.Ct. 232, 9 L.Ed.2d 190 and *Memphis & Little Rock R. R. Co. v. Dow,* 120 U.S. 287, 301–302, 7 S.Ct. 482, 30 L.Ed. 595, all refer to legal or equitable subrogation and do not deny that conventional subrogation exists by contract. Subrogation is the substitution of one person in the place of

another with reference to a lawful claim, demand, or right. The substitution may occur through the invocation of the 'doctrine' of subrogation or it may be confirmed and acquiesced in by contract. Neither method is exclusive." (Footnote omitted.)

3. At pages 481, 482, the opinion reads in part:

"The principle of subrogation was begotten of a union between equity and her beloved— the natural justice of placing the burden of bearing a loss where it *ought to be.* Being so sired this child of justice is without the form of a rigid rule of law. On the contrary it is a fluid concept depending upon the particular facts and circumstances of a given case for its applicability. To some facts subrogation will adhere—to others it will not. *Home Owners' Loan Corporation v. Parker,* 181 Okl. 234, 73 P.2d 170 (1937)."

HODGES, C. J., LAVENDER, V. C. J. and DAVISON, WILLIAMS, IRWIN, BERRY, BARNES and SIMMS, JJ., concur.

DOOLIN, J., dissents.

DOOLIN, Justice, dissenting:

While I agree with the majority the principle of equitable subrogation by operation of law certainly exists and is applicable to an insurer who has paid a loss; it is *not* applicable under the facts and circumstances here. I therefore dissent.

Buyers' attorney neglected to make a requirement regarding a second mortgage existing on the property. After the purchase, buyers paid off the second mortgage. Buyers then made a claim against the errant attorney for *malpractice*. The attorney's malpractice insurance carriers (insurers) paid the buyers' *malpractice* claim.

As the majority points out there are indeed two types of subrogation. *Conventional* subrogation arises from subrogation by agreement; in other words by a subrogation clause in the contract of insurance providing that the insurer will be subrogated to the rights of the insured. The *equitable* or legal right of subrogation, as the legal effect of payment under the policy, inures to insurer without a provision to that effect in the policy.

Conventional subrogation arises because of a contractual provision for subrogation either express or implied. Equitable subrogation does not require an expression in the contract but may be granted to an insurance company who has paid a liability of its insured. Conventional subrogation clauses merely confirm equitable rights that exist without them.[1]

All subrogation rights of an insurance company are derivative from the rights of the insured, whether they arise from a conventional subrogation clause or from equitable principles. These subrogation rights, being derivative, can rise no higher than the rights from which they are derived.[2] In this case the rights are the rights of the insured attorney, not the buyers.

While the principle of equitable subrogation may certainly be applied to an insurer where no conventional subrogation exists, the majority cites no case based on either conventional or equitable subrogation wherein an insurer was entitled to be subrogated to anyone other than its insured.

*Jorski Mill & Elevator Co. v. Farmers Elevator Mut. Ins. Co.,* 404 F.2d 143 (10th Cir. 1968) stands only for the general principles of subrogation enunciated by the majority. In *Jorski* equitable subrogation was used to permit an insurer to be subrogated to rights of *its insured* to collect from an elevator company who failed to deliver wheat stored with it by the *insured.*

In *Sutton v. Jondahl,* 532 P.2d 478 (Okl. App.1975) an insurer attempted to sue a tenant to recover moneys it had paid the lessor for a fire loss allegedly caused by the tenants. The Court of Appeals *did not allow the insurer to be subrogated* to any rights of the lessor to an action against the tenant.

*General Creditors of Estate of Harris v. Cornett,* 416 P.2d 398 (Okl.1966) was an action in probate court. The administrator paid a preferred claim out of funds which were available for payment of general creditors. The court permitted the general creditors to be paid out of funds later acquired by the administrator; a correct decision, if somewhat inaccurately based on subrogation.

In this case, the insurer might have protected itself by taking an assignment of the buyers' right of action against the sellers.[3] No such assignment was pleaded. The insured was the attorney who wrote the title

---

1. See generally Kimball and Davis "The Extension of Insurance Subrogation" 60 Mich.L.Rev. 841 (1962).

2. *PaR Truck Leasing Incorporated v. Bonanza Incorporated,* 425 F.2d 695 (10th Cir. 1970); *Hartford Accident and Indemnity Company v. First National Bank and Trust Company of* *Tulsa, Oklahoma,* 287 F.2d 69 (10th Cir. 1961); 44 Am.Jur.2d Insurance § 1821 and cases cited therein.

3. For example see *Douberley v. Angelini,* 240 So.2d 98 (Fla.App.1970).

opinion, not the buyers. Insurers paid the *attorney's* debt. Insurers could only be subrogated to the rights of the attorney whom they insured. The attorney had no right of action against the sellers. Because insurers' rights are derived from the attorney's and are limited to his rights, *the insurers have no right of action against the sellers.*

An insurer's obligation is to make its insured whole. In consideration of this obligation it receives premiums from its insured. It cannot be indemnified through subrogation for all its payments made pursuant to contractual obligations.

There can be no subrogation where insured has no cause of action against defendants.[4] Accordingly I would affirm the trial court.

---

4. *International Insurance Company v. Medical-Professional Building of Corpus Christi,* 405 S.W.2d 867 (Tex.Civ.App.1966); also see generally 46 C.J.S. Insurance § 1208(b).