2000 OK CIV APP 1

Lorraine KING, Appellant,

v.

Jimmy R. TOWE, Defendant,

and

CMH, Inc., an Oklahoma corporation, and Bank of Inola, Intervenors/ Appellees.

No. 91,348.

Court of Civil Appeals of Oklahoma, Division No. 4.

Sept. 7, 1999.

James P. Tanner Claremore, Oklahoma For Appellant.

William A. Harrington John C. Harrington, Tulsa, Oklahoma, For Appellee CMH, Inc.

## MEMORANDUM OPINION

GOODMAN, P.J.

¶1 This is Lorraine King's (King) appeal from a portion of the trial court's April 23, 1998, order denying her attempt to collect a judgment lien against Jimmy R. Towe (Towe) by sheriff's sale of real property once owned by Towe but now owned by appellee CMH, Inc. Based upon our review of the law and facts, we affirm in part and reverse in part.

### Facts

¶2 Towe executed a promissory note in favor of King. When Towe failed to make the required payments, King filed a petition January 3, 1996, to collect the note and foreclose the collateral pledged to secure that note. Towe failed to timely file an answer or other responsive pleading. King was granted a default judgment in an amount exceeding $39,000, plus interest accruing, in an order filed February 15, 1996. King filed an affidavit of judgment with the Rogers County Clerk the next day, February 16, 1996.

¶ 3 In the meantime Towe, who owned commercial real estate valued between $70,000 and $140,000, orally agreed to sell the real property to CMH, Inc. It is undisputed the oral agreement was reached prior to February 15, 1996. CMH knew Towe's real property was encumbered by four mortgages from Towe to Bank of Inola (BOI), recorded January 6, 1989, February 27, 1989, December 12, 1989, and, October 4, 1993, two federal tax liens, and delinquent ad valorem and personal property taxes totaling in excess of $75,000. It is unclear from this record if Towe informed CMH of King's lawsuit and judgment against him. It is undisputed King's February 16, 1996, judgment lien was inferior to those earlier mortgages and tax liens.

█ ¶ 4 As consideration for Towe's real property, CMH agreed to pay off the encumbrances on the real property up to the sum of $75,000. Because the encumbrances exceeded $75,000, CMH advanced the additional money on behalf of Towe, who in turn executed a promissory note in favor of CMH for the difference. In order to pay off Towe's encumbrances on the property CMH, rather than assuming the existing, prior mortgages, extinguished them and executed a new mortgage [1] in its name in favor of BOI using the commercial property as security for the mortgage. The CMH mortgage was filed of record April 29, 1996, almost two months after King's judgment lien was filed.

¶ 5 In anticipation of the CMH mortgage, BOI had the abstract of the property examined. The abstract company certified the abstract up to February 8, 1996, a week before King's judgment lien was filed. However, BOI did not exercise due diligence and conduct a title search in the interim between February 8, 1996, and the date of the written contract between Towe and CMH or of the mortgage between it and CMH. Later, when BOI authorized a "gap search" of the abstract *after* closing on the property, the abstract company did not find King's lien. An explanation for this failure is not present in the record.

¶ 6 Towe executed a deed in favor of CMH on April 25, 1996. This was recorded April 29, 1996. King, after levying on various pieces of Towe's personal property on March 1, 1996, and April 29, 1996, sought on January 7, 1998, almost 2 years later, to execute on the real property now owned by CMH. Notice was sent to all interested parties, including BOI. BOI filed a motion to quash the execution and set aside the notice and order of sale on February 2, 1998, because BOI claimed to be the owner of a superior mortgage on that real property. Both CMH and BOI sought to have the order of sale quashed. The trial court conducted a hearing on February 12, 1998.

¶ 7 The trial court's April 23, 1998, order determined CMH was the fee simple legal and equitable title holder of the commercial property subject to the mortgage executed by CMH in favor of BOI. The order permitted CMH to intervene as a defendant, set aside and quashed the January 7, 1997, special execution and order of sale of the real property, canceled the pending sheriff's sale, and forever barred King from asserting any right, title, lien, estate, encumbrance, claim, assessment, or interest through her judgment against Towe on the commercial real property now owned by CMH. King appeals.

### Analysis

¶ 8 We first dispose of the undisputed portions of the April 23 order. Both BOI and

---

1. Contrary to assertions in the record that CMH's mortgage was a substituted mortgage, and thus equitably subrogated to the rights of Towe, CMH did not obtain an assignment of those older, superior mortgages, or leave the old mortgages in place, obtain a new mortgage in its name, and then pay off the older mortgages. Rather, CMH chose to pay them off on behalf of the owner of record and mortgagor, Towe. Then as the new owner of record, CMH gave a mortgage in its own name on the property to BOI. The doctrine of equitable subrogation is clearly inapplicable. *See Citizens State Bank of Tulsa v.* *Pittsburg County Broadcasting Co.*, 1954 OK 51, 271 P.2d 725, which stated: "One who, having no interest to protect, voluntarily loans money to a mortgagor for the purpose of satisfying and canceling a prior mortgage, taking a new mortgage for his own security, cannot have the former mortgage revived and himself subrogated to the rights of the mortgagee thereon where he has failed to take an assignment of the prior mortgage and has voluntarily paid the debt and accepts a release of the mortgage of record." (Syllabus by court.)

CMH were permitted to intervene without opposition from King, and the trial court's order permitting intervention is affirmed.

¶ 9 King first claims the affidavit of judgment she filed February 16, 1996, with the Rogers County Clerk was sufficient to establish a judgment lien against the commercial real property. While she concedes the affidavit she filed does not "mirror the statement of judgment prescribed by the administrative director of the courts," it does, nevertheless, "substantially conform" to that prescribed statement, citing *First Community Bank of Blanchard v. Hodges*, 1995 OK 124, 907 P.2d 1047. BOI and CMH contend it does not.

¶ 10 We have examined both the February 16, 1996, "Affidavit of Judgment" filed by King, and the "Form 1201–1A Statement of Judgment" submitted by CMH as the prescribed form and find the information required in both to be virtually identical. We agree with King that the affidavit she filed substantially complied with 12 O.S. Supp. 1993, § 706, the statute in effect at the time of her filing. That statute only requires the statement of judgment to be "substantially in the form" of that prescribed by the court clerk, and does not require the filing of the actual judgment itself. *See*, 12 O.S. Supp. 1993, § 706(E). We conclude King's February 16, 1996, affidavit was sufficient under 12 O.S. Supp.1993, § 706 to constitute a judgment lien on the real property of the judgment debtor, Towe.

■ ¶ 11 It is axiomatic that when the prior, and thus superior, mortgages and tax liens, paid by CMH on behalf of Towe, were extinguished, this caused King's judgment lien on that property to become first in time, and superior to the mortgage subsequently executed by CMH in favor of BOI on April 29, 1996. King is entitled to satisfy her lien out of the equity in the commercial property. CMH is entitled to the rest of the equity therein.

¶ 12 We need not address CMH's argument that a lien only attaches to Towe's equity in the property, and not the property itself, as we have determined King's lien to be superior to all other claims against the property. CMH's argument presumes King's lien to be inferior, a presumption we hold invalid. Because the trial court chose not to state the specific reasons for its decision, even when asked to do so by King, we are unable from this record to determine if the trial court based its decision on the alleged infirmity of King's affidavit of judgment, on CMH's argument of equitable subrogation, on the failure of King to prove that no more personal property remained to be sold by the sheriff before proceeding to foreclose on the real property, or on some other basis. Therefore, we reverse the trial court's order barring King from asserting any right, title, lien, estate, encumbrance, claim, assessment, or interest through her judgment lien.

■ ¶ 13 CMH argues the only equity in the commercial property is that which was created by its extinguishment of the prior mortgages, and therefore it, and not King, should be entitled to all of the equity therein. CMH contends King is unjustly enriched if she is permitted to satisfy all of her lien out of equity created by CMH, and contends it should be equitably subrogated to the equity.

There are two kinds of subrogation, (1) legal or equitable; and (2) conventional. Conventional subrogation comes from a contract or agreement, expressed or implied. *Jorski Mill & Elevator Co. v. Farmers Elevator Mut. Ins. Co.*, 10th Cir., 404 F.2d 143, 147 (1968). Legal subrogation is a creature of equity, not depending upon contract, but upon the equities of the parties. It is not dependent upon assignment, privity, or strict suretyship. *General Creditors of Estate of Harris v. Cornett*, Okl., 416 P.2d 398, 400 (1966). This principle is a fluid concept depending upon the particular facts and circumstances based on natural justice of placing the burden of bearing a loss where it ought to be, and without the form of a rigid rule of law. *Sutton v. Jondahl*, Okl.App., 532 P.2d 478, 482 (1975)(footnote omitted).

*Lawyers' Title Guaranty Fund v. Sanders*, 1977 OK 210, ¶ 4, 571 P.2d 454, 456.

¶ 14 We disagree with CMH's argument. Had CMH, through its lender, practiced due diligence and discovered the judgment lien prior to the execution of CMH's mortgage, it

could have chosen to either assume the existing, prior mortgages and therefore maintain its superior position in time, or could have chosen not to give the mortgage in the first instance. It would therefore not have created the equity in the property to which it now says it is entitled. The risk of loss of that equity in such an instance is on CMH, not King.[2] In accordance with the equitable risk-of-loss shifting principals set out in *Sanders*, we hold CMH is not entitled to invoke the doctrine of equitable subrogation.

¶ 15 That portion of the trial court's order of April 23, 1998, allowing CMH to intervene as a party defendant is affirmed. As the time for the sheriff's sale of the commercial real estate has passed, the issue of the trial court's decision to recall and cancel the order of sale is moot. We reverse the trial court's order as it pertains to King's right to assert a claim against the commercial real property through her judgment lien. We hold King's judgment lien of record is superior to that of CMH's mortgage. King is entitled to pursue whatever remedies are available to her to enforce her lien.

¶ 16 AFFIRMED IN PART AND REVERSED IN PART.

RAPP, J., and TAYLOR, J., concur.

---

2. There is a letter in the record from King's attorney to CMH, dated August 14, 1997, informing CMH that after King filed her affidavit of judgment, King's attorney learned the property was being sold. The letter states King's attorney then called BOI and informed it of the lien. BOI responded that its mortgage (it is not clear to which mortgage it was referring) was superior to King's lien, and BOI would not recognize the lien. Thus, CMH and BOI were both on notice of the existence of the lien, and ignored it at their peril.