2000 OK CIV APP 71

**RICE–BELL PARTNERSHIP,**
Plaintiff/Appellant,

v.

**CAPITOL INDEMNITY CORPORATION,**
Defendant/Appellee,

and

Gene Haynes, District Attorney for the 12th District, Jerald Allison, Agri–Services, Bill Allard, Charlie Brackett, B–Bar–T, Dave Branham, Don Carnes, C.B. Cattle, Andy Chupp, Chupp Girls Dairy, E.J. Chupp, Spa Emanuel Chupp, Nick Clark, Claudan Ranch, Clear View Ranch, Janet Clinton, Eldora Coblentz, Lloyd Coblentz, Morris Cole, Complete Auction, Julie Cooper, Jim C. Crow, Craig Coverdell, Patsy Dernan, Eli Detwiler, Willis Detwiler, Erin Dixon, Dixon Ranches, Tim Durman, Billy Dye, Ruby Dye, Walter Eastom, Gayle Forbes, Larry Foster, Dean Garrett, Ivan Gingerich, Adolph Golbek, Steven Guilfoyle, Hardin Farms, William Hart-

ley, John Hanna, Ray Haxley, Dale Holly, Troy Jackson, Bill Jones, Tom Kelley, Clay King, Jennifer Larmon, Brooks Ledbetter, George Linihan, Carl Lukas, Billy McDowell, Christie Miller, Ralph Miller, Sam Miller, George Moore, Parsons Livestock, Wanda Peeples, Pryor Veterinary Hospital, Lloyd Rambo, W.C. Rice, Floyd Schrock, Steer, Inc., Garry Steinhoff, Clyde Stout, Billy Ivan Tackett, Earl Troyer, Brandon Wade, Jim Wade, Doug Wagner, Angela Warren, Gary Walsh, J.D. Walsh, William Watkins, Gene White, Glenn Yoder, Nelson Yoder, Mose Yoder, Defendants,

and

**Oklahoma Department of Agriculture,**
Intervenor.

No. 92,289.

Court of Civil Appeals of Oklahoma, Division No. 2.

March 28, 2000.

Certiorari Denied May 16, 2000.

Paul H. Petersen, Tulsa, Oklahoma, R. Benjamin Sherrer, Randall Elliott, Randall Elliott, P.C., Pryor Creek, Oklahoma, For Appellant.

Evan B. Gatewood, Hayes & Magrini, Oklahoma City, Oklahoma, For Appellee.

*OPINION*

TAYLOR, J.

¶ 1 Plaintiff, Rice–Bell Partnership, appeals the trial court's order finding that Rice–Bell was not entitled to recover on a bond issued by Defendant, Capitol Indemnity Corporation. Based on the record and applicable law, we affirm.

¶ 2 The genesis of this lawsuit is a $100,000 loan Rice–Bell made to Pryor Livestock Market (PLM), a livestock auction operation. Federal regulations promulgated pursuant to the Packers and Stockyards Act, 7 U.S.C. §§ 181–231 (1999), required PLM to maintain a trust account for depositing proceeds of livestock sales and disbursing those proceeds to livestock sellers. PLM told Rice–Bell its account was short, and it needed the loan to pay dairy cattle owners who had recently sold their cattle at auction.

¶ 3 Rice–Bell made the loan, with PLM signing a note requiring it to repay the money at 20 percent interest in two weeks. Rice–Bell received a security interest in PLM's accounts receivable, inventory, and equipment. The $100,000 was deposited in PLM's trust account and used to pay the cattle sellers.

¶ 4 PLM failed to repay the loan. The Oklahoma Department of Agriculture closed PLM for additional shortages in its account resulting from a later auction. Rice–Bell sued PLM, asserting PLM fraudulently induced the loan. Rice–Bell ultimately obtained a default judgment.

¶ 5 In addition to requiring the trust account, the Packers & Stockyards Act required PLM to obtain a livestock bond. Relevant to this appeal, PLM obtained a bond from Capitol in the amount of $60,000. The bond stated:

Now, Therefore, the Condition of this Bond is such that:

Applicable if Principal [here, PLM]

SELLS on commission[:] (1) If the said Principal shall pay, when due to the person or persons entitled thereto the gross amount, less lawful charges, for which all livestock is sold for the accounts of others by said Principal,

then this bond shall be null and void, otherwise to remain in full force and virtue, subject to the following terms, conditions and limitations[.]

¶ 6 The other conditions of the bond dealt with circumstances not applicable here: where the Principal bought on commission, or as a dealer or a packer, or acted as a clearing agency. The bond also provided that:

(c) Any person damaged by failure of the Principal to comply with any condition clause of this bond, may maintain suit in his own name to recover on this bond even though such person is not a party named in this bond. . . .

¶ 7 Rice–Bell sued Capitol for the proceeds of the bond, asserting it was entitled to be equitably subrogated to the cattle sellers' claims against the bond. It also asserted it was entitled to the bond's proceeds because it was a "person damaged" under the bond's above-quoted clause (c).

¶ 8 The trial court denied Rice–Bell's claim against the bond. It held that the bond did not cover Rice–Bell's claim, and that the bond's clause (c) did not create coverage for Rice–Bell. It further held that PLM had misrepresented its ability to repay the loan, but that Rice–Bell had made a voluntary loan that did not create any subrogation rights entitling Rice–Bell to recover on the bond.

¶ 9 Rice–Bell appeals. We note Rice–Bell also sued a group of cattle sellers and District Attorney Gene Haynes, who held proceeds from the sale of their cattle at a PLM livestock auction conducted after Rice–Bell made the loan. The trial court held these sellers were entitled to the proceeds and to a portion of the bond. Rice–Bell has dismissed the portion of this appeal dealing with those sellers' rights to the funds. Therefore, the subject of this appeal is the net remaining balance of the bond, which is $26,846.

¶ 10 In matters of equitable cognizance, the trial court will be affirmed unless its decision is clearly contrary to the weight of the evidence. *Burdick v. Independent Sch. Dist. No. 52*, 1985 OK 49, ¶ 12, 702 P.2d 48, 54–55. When the law and the facts warrant, an equity decree may be affirmed if it is

sustainable on any rational theory and the ultimate conclusion reached is legally correct. *Bankoff v. Board of Adjustment*, 1994 OK 58, ¶ 17, 875 P.2d 1138, 1143.

■ ¶ 11 A review of the language of the bond reveals the trial court correctly determined that the bond did not cover Rice–Bell's claim. The bond states that it would cover those persons entitled to the gross amounts for which all livestock was sold. Obviously, Rice–Bell is not a cattle seller and is not therefore "a person due" the proceeds from the sale of cattle at the auction.

■ ¶ 12 Additionally, the trial court correctly determined that Rice–Bell is not "a person damaged" for purposes of the bond's clause (c). Rice–Bell contends that if PLM had paid the cattle sellers at the subsequent auction, then the money that was held by the District Attorney as proceeds from that auction would be considered accounts receivable in which Rice–Bell held a security interest.

■ ¶ 13 This argument is based on speculation and could be made by any lender or general creditor of PLM: that if PLM had somehow found other sources of income to pay the cattle sellers, any excess money collected from the sales would be available for recovery. Also, this argument ignores the reason Congress promulgated the bonding requirement in the Packers and Stockyards Act: "... to safeguard *the farmers and ranchers who produce cattle* against the losses they would suffer if they sold their livestock to insolvent or defaulting purchasers." *Travelers Indem. Co. v. Manley Cattle Co.*, 553 F.2d 943, 945 (5 th Cir.1977)(footnote omitted; emphasis added). In *Travelers*, Baker (a dealer) bought cattle, sold them to another party, and then bought them back in a complex series of transactions involving a lender who provided financing and operated a feed lot in which the cattle were placed. The lender asserted it had participation rights in a bond obtained by Baker. The court held:

> These are not the types of transactions intended to be secured by the bond required of registered dealers under the Packers and Stockyards Act and its implementing regulations.
>
> The purpose of the bond requirement in the original enactment of the Packers and Stockyards Act, Act of Aug. 15, 1921, ch. 64, § 1, 42 Stat. 159 (1921), was to safeguard the farmers and ranchers who produce cattle against the losses they would suffer if they sold their livestock to insolvent or defaulting purchasers. By building confidence in the financial stability of dealers, the Act intended to stabilize and encourage the production of beef and other livestock. The 1958 amendments did not change this concept of protection....
>
> ....
>
> Baker's bond, by its terms, assured payment of the price of cattle purchased by Baker as a dealer for his own account. Baker had bought and paid for the cattle involved in this transaction and the growers who made these original sales are not claimants. Hence, any potential bond obligation as to the purchase price of this lot of livestock had been effectively discharged and the purposes of the Act to secure the purchase transaction from the farmers and ranchers who had produced the cattle had been fulfilled....

*Id.* at 945 (footnotes omitted). The Fifth Circuit then affirmed the trial court's judgment denying the lender any participation rights in the bond.

¶ 14 Though the facts in *Travelers* are more complex than in the instant case, we agree with the court's analysis. Though the Act states it is to be liberally construed, it also states it is to be construed according to its purpose of preventing economic harm to the producers and consumers of livestock. *Miles v. Starks*, 590 S.W.2d 223, 226 (Tex. Civ.App.1979). We conclude, as the trial court did, that the bond does not cover Rice–Bell's claim.

■ ¶ 15 Finally, we agree with the trial court that Rice–Bell was not entitled to be equitably subrogated to the cattle sellers' claims against the bond. There are two types of subrogation: conventional and—at issue here—legal, or equitable. *See Lawyers' Title Guar. Fund v. Sanders*, 1977 OK 210, ¶ 4, 571 P.2d 454, 456. Equitable subrogation is a creature of equity, and is a fluid concept dependent upon the particular facts and circumstances of a case. It is based on natural justice's placement of the burden of bearing a loss where it ought to be, and is without the form of a rigid rule of law. *Id.*

¶ 16 However, equity cannot be invoked to change rights defined and established by law, or to create a right where none exists. *In re Estate of Redwine,* 1968 OK 122, ¶ 17, 445 P.2d 275, 278. We believe Rice–Bell asks too much of equity to enforce a bond which, by its own terms and by the clear intent of Congress, is limited to protecting livestock sellers who would suffer losses if they sell to insolvent or defaulting purchasers.

¶ 17 In *Lawyers' Title,* cited above, the Oklahoma Supreme Court determined that justice required placing the burden of a loss on parties who breached a warranty and were unjustly enriched. By contrast, in the instant case, Capitol has not been unjustly enriched. It contracted to pay a loss only if certain conditions occurred. We cannot agree with Rice–Bell that Capitol should have to bear the loss Rice–Bell has suffered.

¶ 18 AFFIRMED.

¶ 19 RAPP, P.J., and REIF, J. (sitting by designation), concur.