2013 OK 63

**STEADFAST INSURANCE COMPANY, Plaintiff/Appellee,**

**v.**

**AGRICULTURAL INSURANCE COMPANY, n/k/a Great American Assurance Company, Defendant/Appellant.**

No. 110,562.

Supreme Court of Oklahoma.

July 2, 2013.

Gerald P. Green, Pierce, Couch, Hendrickson, Baysinger & Green, LLP, Oklahoma City, Oklahoma, and Tory J. Bishop (pro hac vice), Kutak Rock LLP, Omaha, Nebraska, for Plaintiff/Appellee.

Sarah J. Timberlake, George W. Dahnke, Abowitz, Timberlake, Dahnke & Gisinger, P.C., Oklahoma City, Oklahoma, for Defendant/Appellant.

REIF, V.C.J.:

¶ 1 This case presents a Certified Question of Law submitted by the United States Court of Appeals for the Tenth Circuit, pursuant to 20 O.S.2011, 1601 through 1606. A three-judge panel of that court seeks an answer to an unsettled question of Oklahoma law concerning the application of equitable *subrogation*. The panel inquires: Whether a second-level excess insurer can assert a claim for equitable subrogation against a first-level excess insurer even though the insured has agreed with the first-level insurer that the first-level insurer has exhausted its coverage limits and thus released the first-level insurer from any further obligation under the policy? Upon review, we answer that a second-level excess insurer can assert a claim against a first-level excess insurer under the circumstances in this case, but express no opinion about the merits or outcome of this claim.

¶ 2 This question arose in a dispute between the first-level excess insurer and the second level excess insurer of the Grand River Dam Authority (GRDA). Steadfast Insurance Company is GRDA's first-level excess insurer and Agricultural Insurance Company is GRDA's second-level excess insurer.

¶ 3 The certification document contains a detailed statement of the facts that underlie the dispute between Steadfast and Agricultural. However, the material facts of that dispute are summarized in the introductory paragraph of the certification document.

¶ 4 The introductory paragraph relates that Steadfast issued successive insurance policies to provide GRDA first-level excess general liability coverage from 1993 through 2002. Agricultural provided GRDA with second-level excess liability insurance during this same time period, which was triggered once Steadfast had reached its policy limits for a given year.

¶ 5 Steadfast defended GRDA against a number of flooding claims made from 1993 through 2002. Although the flooding at issue spanned the entire nine-year period of coverage, Steadfast and GRDA agreed that the amounts Steadfast paid on those claims would be allocated to one policy—the 1993–1994 Steadfast policy. Agricultural has claimed that this agreement to allocate all of the flooding claims paid by Steadfast to the 1993–1994 policy wrongfully triggered Agri-

cultural's second-level excess coverage for that year.

¶ 6 Agricultural asserts that the agreement between Steadfast and GRDA shifted costs to Agricultural that would have been borne by Steadfast in the absence of the Agreement. Agricultural believes it should recover those costs from Steadfast by equitable subrogation.

¶ 7 Steadfast and Agricultural took this dispute to the United States District Court for the Northern District of Oklahoma. The U.S. District Court ruled Agricultural did not have a viable claim for equitable subrogation against Steadfast. The court reasoned that equitable subrogation was not available to Agricultural because GRDA had released Steadfast from any further liability on the 1993–1994 policy. Steadfast persuaded the court that equitable subrogation is based on a right derived from the insured and the release in question extinguished all rights GRDA had against Steadfast.

¶ 8 Agricultural appealed to the United States Court of Appeals for the Tenth Circuit. That court examined Oklahoma law concerning equitable subrogation, and found no Oklahoma precedent to cover this situation. The court also looked to the case law of other jurisdictions and found divergent authority on this point. This certification proceeding followed.

¶ 9 The leading Oklahoma case on equitable subrogation between insurers where excess coverage is involved is *United States Fidelity & Guaranty Co. v. Federated Rural Elec. Ins. Corp.*, 2001 OK 81, 37 P.3d 828 (hereafter the *USF & G* case). The *USF & G* case is not directly on point, but it cites approvingly *Fireman's Fund Ins. Co. v. Maryland Casualty Co.*, 65 Cal.App.4th 1279, 77 Cal.Rptr.2d 296 (1998). The *Fireman's Fund* case sets forth the derivative right rule applied by the United States District Court and represents the line of authority that supports Steadfast's position that Agricultural cannot seek equitable subrogation from Steadfast. The case of *Sharon Steel Corp. v. Aetna Cas. & Sur. Co.*, 931 P.2d 127 (Utah 1997), represents the other view that equitable subrogation can be pursued in spite of a release by an insured. This case refused to

allow a release given by an insured to bar equitable subrogation where the insurer that obtained a release did so with notice of the unfair impact on another insurer.

¶ 10 The *USF & G* case does state that subrogation is a "derivative concept" and "allows an insurer who has paid coverage to stand in the shoes of the insured." *USF & G*, 2001 OK 81, ¶¶ 9–10, 37 P.3d at 831. However, this case also provides that equitable subrogation "does not depend upon a contract but arises by implication in equity to prevent an injustice [and] is based on the relationship of the parties." *Id.* at ¶ 9, 37 P.3d at 831. An earlier case similarly provides that equitable subrogation "is a creature of equity, not depending upon contract [nor] upon assignment, privity, or strict suretyship." *Lawyers' Title Guaranty Fund v. Sanders*, 1977 OK 210, ¶ 4, 571 P.2d 454, 456. This case also declares "This principle is a fluid concept depending upon the particular facts and circumstances based on [the] natural justice of placing the burden of bearing a loss where *it ought to be,* and without the form of a rigid rule of law." *Id.; see also Republic Underwriters Ins. Co. v. Fire Ins.*, 1982 OK 67, ¶ 6, 655 P.2d 544, 547.

¶ 11 GRDA's agreement with Steadfast to include losses outside the policy year of 1993–1994 and the release of further claims is "the form of a rigid rule of law" that cannot ipso facto defeat a claim of equitable subrogation by Agricultural. The GRDA/Steadfast agreement and release is just one of the relevant facts and circumstances that must be considered in determining the "superior equity as between the parties" and placing the burden of bearing a loss where it ought to be. *Lawyers' Title,* 1977 OK 210, ¶ 2, n. 1, 571 P.2d at 455–56. Steadfast's notice, if any, of the impact that the settlement and release would have on Agricultural's coverage must be considered in balancing the equities.

¶ 12 Another relevant consideration is whether GRDA's settlement with Steadfast, and its effect on Agricultural's coverage, is consistent with GRDA's implied duty to deal fairly and in good faith with Agricultural. "The common law imposes [an] implied

covenant [of good faith and fair dealing] upon all contracting parties, that neither party, because of the purposes of the contract, will act to injure the parties' reasonable expectations nor impair the rights or interests of the other to receive the benefits flowing from their contractual relationship." *First Nat. Bank and Trust Co. of Vinita v. Kissee,* 1993 OK 96, 859 P.2d 502, 509. An excess insurer has a reasonable economic expectation that it will not be responsible on its policy until the insurance at the level lower to the excess insurer has been exhausted in accordance with the express provisions and obligations in the insurance contract. *See USF & G,* 2001 OK 81, ¶ 15, 37 P.3d at 833.

¶ 13 These considerations lead us to conclude that the derivative right rule relied upon by Steadfast and the U.S. District Court is inconsistent with Oklahoma's broad view of equitable subrogation. In the case at hand, the derivative right rule gives undue emphasis to only one aspect of the relationship between GRDA, Steadfast and Agricultural. It represents "a rigid rule of law" that would allow GRDA and Steadfast to alter Agricultural's reasonable expectation concerning (1) the losses used to measure exhaustion of Steadfast's policy and (2) Agricultural's liability on its excess policy. The derivative right rule also fails to consider whether Steadfast pursued the GRDA settlement and release with notice of *potential* detriment to, or unfair impact upon, Agricultural's excess coverage. In short, there is nothing "equitable" about a strict derivative right rule of equitable subrogation and we reject the application of this rule to the case at hand.

¶ 14 Our answer to this certified question of law is limited to declaring Oklahoma law and is not intended to direct how the federal courts apply our declaration of law in resolving the controversy between the parties. Furthermore, we express no opinion about (1) the weight to be given any of the facts and evidence relating to Agricultural's claim based on equitable subrogation as disclosed in the certifying document, or (2) the ultimate merit of this claim.

## CERTIFIED QUESTION ANSWERED.

All Justices concur.